[No. G000381. Fourth Dist., Div. Three. July 12, 1985.]

MICHAEL M. PRESSLER, Plaintiff and Appellant, v.
IRVINE DRUGS, INC., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b), parts I, II, III, IV and V are not published as they do not meet the standards for publication.

## COUNSEL

J. Patrick Maginnis, Jeannette Torrel Maginnis and Maginnis & Maginnis for Plaintiff and Appellant.

Portigal, Hammerton & Allen and Martin J. Doherty for Defendant and Appellant.

Musick, Peeler & Garrett, James E. Lundlam, Horovitz & Levy, Ellis J. Horovitz and S. Thomas Todd as Amici Curiae on behalf of Defendant and Appellant.

---

## OPINION

**SONENSHINE, Acting P. J.**—In September 1979 Michael Pressler, a diabetic who had required daily injections of insulin for approximately 20 years (since the age of 13), requested his usual Semilente insulin from a clerk at the pharmacy counter of Danber Drugs. She replied there was no prescription for a Mr. Semilente. When informed Semilente was the *product,* she spoke with a man, apparently the pharmacist, and was told either "Give him some Lente" or "Give him Lente."

Without noticing he was given Lente rather than Semilente (or being aware at the time of any distinction), he injected the drug for several days. He experienced intermittent episodes of disorientation. At noon on September 30 he felt unwell and fell asleep. He did not awaken until 3 a.m. on October 1, having missed his scheduled employment as an accordion player the previous evening. Upon awakening, he was confused and disoriented, but called his girlfriend to find out what time it was. He apparently told her he had discovered he had been using Lente rather than Semilente. The evidence is unclear as to whether he did or did not discontinue its use.

Pressler spent the following evening at his girlfriend's apartment. She was awakened at 2 a.m. by his heavy breathing and noticed he was losing body fluids and had become rigid. She called the paramedics who injected him with glucose and transported him to the hospital for treatment.

Despite a return to his correct insulin, he continued to suffer hypoglycemic attacks. On two occasions his condition warranted treatment by paramedics, while other instances required only the ingestion of orange juice or food. His parents, brother and girlfriend reported noticeable changes in his physical abilities, mental attitude, ability to play the accordion, memory, awareness of his own diabetic condition and his sexual habits. In March 1981 Pressler, an expert skier, while executing an intermediate run in Sun Valley, crashed into a tree and suffered severe injuries. He has no recollection of the incident or its cause. However, eyewitnesses testified he suddenly

went out of control, lost a ski, and taking no evasive action whatever, shot over the edge of the run.

Pressler filed a complaint for pharmaceutical malpractice and negligence against Danber and against Robert Robinson, a part owner and one of the pharmacists. Danber and Robinson raised contributory negligence and Civil Code sections 3333.1 and 3333.2 as affirmative defenses.[2]

Following trial, the jury returned its special verdict, finding no negligence on the part of Pressler or Robinson,[3] but assigning liability to Danber in the amount of $425,000. The court then asked the jury to break down the lump sum award pursuant to supplemental special interrogatories, which they returned as follows: medical, $25,000; loss of earnings, $75,000; and general damages, $325,000. After the jury was dismissed, the court on its own motion reduced the general damages by $75,000 pursuant to section 3333.2. Danber's motion for new trial was denied.

Danber appeals, claiming there was insufficient evidence to support the jury's determinations: (1) Pressler was not negligent, (2) there was a connection between the injection of Lente and any diabetic reaction after its discontinuance, and (3) damages were assessable for future medical costs and future loss of earnings. It further assigns error in allowing Dr. James Gaume's testimony regarding the standard of care of a pharmacist and his statement concerning his understanding, when in medical school, of the "L" on a carton of Lente. Lastly, he complains of attorney misconduct on the part of Pressler's counsel. In his cross-appeal, Pressler argues it was improper, once the jury had returned its verdict, to require a breakdown in the lump sum award. He insists Civil Code section 3333.2 is unconstitutional on its face and, in any event, the court had no jurisdiction to present interrogatories after the special verdict was returned.

APPEAL

I*

. . . . . . . . . . . . . . . . . . . . . . .

---

[2]Section 3333.1 allows, in a personal injury action against a health care provider, evidence of plaintiff's collateral benefits received as a result of the injuries.

Section 3333.2 places a ceiling of $250,000 on noneconomic losses recoverable in an action for injury against a health care provider based on professional negligence.

All statutory references are to the Civil Code unless otherwise specified.

[3]Robinson was absolved because there was no evidence he was the *particular* pharmacist on duty.

*See footnote 1, *ante,* page 1244.

CROSS-APPEAL

Pressler claims defense counsel never requested special interrogatories pursuant to section 3333.2 and thus waived any right to reduction of the award. He also contends the court had no jurisdiction to require answers to interrogatories after their original verdict was returned.

■ Our examination of the record leads us to conclude there was no waiver of the section's prohibition against noneconomic losses in excess of $250,000. ■ And, although the proper procedure would have been to submit the interrogatories with the original verdict, under all the circumstances of this case we find the judgment should be affirmed.

■ Prior to final argument, counsel for Danber asked the court how the Civil Code section 3333.2 affirmative defense would be handled. He particularly requested the court's guidance with regard to how the issue should be presented to the jury.[13] The court replied it would make a decision before judgment was entered, *if* the amount of general damages claimed in Pressler's final argument exceeded $250,000. The court was concerned whether the section was constitutional and acknowledged the issue was under consideration by the Supreme Court.[14]

Before the jury retired, Pressler submitted special interrogatories which were refused by the court as "extremely confusing." The court asked counsel "to give a little thought on it while the jury is out deliberating. If the jury comes back under the present verdict, and we have a situation where the award, net award, is in excess of $250,000, I will then look at whatever you prepare while the jury is out and get it into some language that is good, and then we'll cover that bridge when we come to it. Anything else to put on the record?" Pressler's counsel replied, "No, Your Honor."

Far from waiving its right to the section's required reduction, Danber clearly stated its desire to avail itself of the protection. In light of the un-

---

[13]The section provides in pertinent part: "In no action [for negligence of a health care provider] shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

[14]"[By defense counsel]: I think it's appropriate at this time to request an instruction from the court as to how argument should be presented in this area and what is going to be requested in the way of a prayer or requested from the jury in the way of general damages. [¶] The Court: Well, I feel it's proper at this time, knowing again that the constitutionality is being questioned, and there's a case before the Supreme Court on this, and not being on the Supreme Court, to allow the argument to be made by the plaintiff for any amount they so wish, and in the event the amount is over the two hundred and fifty for general damages, then I'll have to make a decision before the judgment is entered, and that's the way I'll handle it."

certainty of the law at the time, the court was understandably hesitant to require more of the jury than might be necessary. Danber did no more than abide by the court's direction, a procedure to which Pressler did not object.

Following instruction and argument, the jury retired, later returning with their verdict[15] and were polled. The court stated: "Because of a situation we will have an additional couple of questions for you to answer this afternoon, and so, therefore . . . you can take until 1:30 [for lunch] and at that time we will see you again." Upon return from lunch, they were given special interrogatories which they returned, categorizing the lump sum awarded as follows: medical expenses, past and future, $25,000, loss of earnings, $75,000, and general damages, $325,000. The jury was dismissed and the court reduced the general damage award to $250,000 pursuant to Civil Code section 3333.2.[16]

█ Pressler argues the court had no jurisdiction to return the jury to deliberation following rendition of their special verdict. Code of Civil Procedure section 625 provides "the court may direct the jury to find a special verdict . . . [and] may instruct them, if they render a general verdict, to find upon particular questions of fact . . . ." However, Pressler insists the interrogatories must be submitted *with* the verdict form or not at all.

It is clear, from its colloquy with counsel, the court felt an allocation of damages might be unnecessary. Had the jury's award on the original special verdict form been less than $250,000, the additional requirement of a breakdown into special and general damages would be superfluous. There was no objection by either party to this *procedural* decision.[17] The jury was not asked to *change* their verdict, merely to break down the lump sum award. They no doubt had reached the lump sum amount by this very process. The

---

[15]"We, the jury in the above-entitled action, find the following special verdict on the following issue submitted to us: [¶] Were the following named defendants, or any of them, negligent? Defendant, Irvine Drugs, Inc. Answer: Yes. Defendant, Robert Robinson, an individual. Answer: No. Was the negligence of [Irvine] a legal cause of injury? Answer: Yes. Was the plaintiff negligent? Answer: No. What is the total amount of damages suffered by the plaintiff as a legal result of the incident in question? Answer: $425,000."

[16]Pressler's contention the section is unconstitutional has, in the interim, been definitively answered by our Supreme Court in *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368, 695 P.2d 665]. "[T]his section—by placing a ceiling of $250,000 on the recovery of noneconomic damages—is rationally related to the objective of reducing the costs of malpractice defendants and their insurers." (*Id.,* at p. 159.) Thus the section "does not violate due process." (*Id.,* at p. 161.) It also "does not amount to an unconstitutional discrimination," (*id.,* at p. 162) thereby complying with the equal protection clause.

The brief submitted by amici curiae, arguing in favor of the section's constitutionality, need not be addressed.

[17]The parties did object to their content. Pressler contended the $250,000 ceiling was unconstitutional; Danber claimed there was insufficient evidence to support an award for future medicals or loss of earnings.

interrogatories were not presented to *test* the verdict. Rather they were offered to determine if the general damage portion of the lump sum award was in excess of $250,000. They were unnecessary unless the award exceeded that ceiling. When the special verdict was rendered for $425,000, it then became insufficient,[18] allowing the court, in its discretion, to propound the further questions.

California Rules of Court, rule 230, requires a party desiring special findings to present them in writing to the judge before argument, *unless otherwise ordered.* Here, the trial judge so ordered by stating the breakdown would be requested only in the event it became necessary.

We note the decision, relied on by Pressler, in *Vivion* v. *National Cash Register Co.* (1962) 200 Cal.App.2d 597 [19 Cal.Rptr. 602]. The court stated, "it is the intent of this language [Code Civ. Proc., § 625] to require the special verdicts [or interrogatories] to be given to the jury not later than the time the general verdicts are given to them." (*Id.,* at p. 602.)

In *Vivion,* prior to argument, the court "indicated that it would not present to the jury certain special interrogatories or special verdicts proposed by the plaintiff. The court indicated, however, 'I wouldn't request them to give special instructions as a part of the verdict, but after it's over and on my own, for what it's worth, if they come back with a defense verdict, I will send them back for those on my own . . . .'" (*Id.,* at p. 600.) After the jury returned a verdict for the defense, the court propounded five interrogatories to them. On appeal, the court noted, "It is only when '. . . the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court, or the jury may be again sent out.' (Code Civ. Proc., § 619.) [¶] It was entirely discretionary with the judge whether or not special interrogatories should be propounded to the jury and having ruled against propounding them the sole determination before the jury was the rendition of their general verdict. Having rendered such verdict, nothing remained but for the judge to have discharged the jury from the case." (*Id.,* at p. 602.)

There are several reasons we do not feel bound by *Vivion.* First, except for their substantive objections, both parties acquiesced in the *method* suggested by the trial court. Second, and more important, the provisions of Civil Code section 3333.2 are mandatory. Third, unlike *Vivion,* the trial court did *not* rule against propounding the interrogatories. Rather, it made clear they would be presented in the event the total award exceeded

---

[18] "'Insufficient' is defined as 'inadequate for some need, purpose or use.'" (*Crowe* v. *Sacks* (1955) 44 Cal.2d 590, 596 [283 P.2d 689].)

$250,000. Fourth, there was no apparent insufficiency in the *Vivion* verdict. Here, on the other hand, when the verdict was returned for $425,000, it then became facially insufficient or inadequate for the purpose of complying with section 3333.2.

While it is generally error to proffer special questions after return of the verdict, under the unique circumstances of this case, we feel the judgment must be affirmed. All parties were aware of the time for presentation of the interrogatories. Pressler had in fact proffered a sample set.[19] Knowing in advance, he had every opportunity to argue in favor of elevated economic, as opposed to noneconomic, losses.[20]

Given the uncertainty of section 3333.2's constitutionality at the time of trial, the thorough discussion of the issue among the court and both attorneys, and the fact the mandatory requirements of the section were complied with, albeit unconventionally, we feel the interests of justice would not be served, under the facts of this case, by reversing the judgment.

The judgment is affirmed. Each party to bear its own costs.

Wallin, J., and McLaughlin, J.,* concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied September 24, 1985. Bird, C. J., was of the opinion that the petition should be granted.

---

[19]Pressler's later actions also indicate, if his constitutional objections failed, he *desired* the special interrogatories. Following rendition of the jury's verdict, the court requested proper interrogatories. Pressler's counsel replied, "Well, if you'll direct me exactly how you want them prepared, by then I can have them typed up . . . ." If the court erred, it did so with the acquiescence, if not the invitation, of counsel.

[20]We note, had the issue of allocation not been *raised* until after the verdict was returned, our conclusion might be different. If there had been no mention of a reduction until after the jury returned the lump sum award and been dismissed, Pressler would have been denied an opportunity to seek additional special verdicts breaking down the award. In that instance our Supreme Court suggests remand for retrial might be necessary. (*American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 378 [204 Cal.Rptr. 671, 683 P.2d 670].) *American* addressed future periodic payments under MICRA, but the analogy is apparent. Without the jury's acknowledgment of the component parts of the award, the trial court could not determine *if* the noneconomic losses exceeded $250,000. Here both parties were aware in advance. The issue was raised as an affirmative defense in the pleadings. It was discussed outside the presence of the jury on several occasions. Both had an opportunity to insist the interrogatories accompany the verdict; neither did so.

Pressler, after oral argument, suggested we note the decision in *Cravan* v. *Crout* (1985) 163 Cal.App.3d 779 [209 Cal.Rptr. 649]. The case is clearly distinguishable. Defendant's request for periodic payments of assessed future medical expenses (Code Civ. Proc., § 667.7) was not made until almost two months after notice of *entry of judgment*. In the present case, although a verdict had been rendered, no judgment had been entered.

*Assigned by the Chairperson of the Judicial Council.