[No. S027895. Mar. 25, 1993.]

NICHOLAS E. TAVAGLIONE, Plaintiff and Respondent, v.
MICHAEL C. BILLINGS et al., Defendants and Appellants.

## COUNSEL

Haight, Brown & Bonesteel, Roy G. Weatherup and Rita Gunasekaran for Defendants and Appellants.

Miller, Boyko & Bell, Roy Morrow Bell, Fletcher W. Paddison, Raymond Pepper and Thomas T. Lord for Plaintiff and Respondent.

## OPINION

**LUCAS, C. J.**—In this case, we consider the interplay between the jury's responses to special interrogatories, disclosing the amount of damages attributable to plaintiff's various theories of recovery, and the jury's general verdict, setting forth the total amount of damages awarded to plaintiff. Here, plaintiff sued defendants on several different causes of action, including defamation. The jury's general verdict awarded plaintiff approximately $2.25 million in compensatory damages, but the jury's responses to special interrogatories disclosed it found plaintiff's damages *on the defamation count* were only $604,787; damages on plaintiff's other theories accounted for the difference. The jury also awarded plaintiff $2.4 million in punitive damages.

On appeal, although defendants raised 17 issues affecting each of plaintiff's theories of recovery, the Court of Appeal limited its review to the 8 defamation issues, rejected them, and upheld the entire $2.25 million damage award on the theory that "the judgment must be affirmed so long as any one count or theory of recovery is supported by substantial evidence." Because this analysis fails to properly take into account the jury's responses to special interrogatories, which limited to $604,787 plaintiff's damages for defamation, we will reverse the judgment and remand the cause to the Court of Appeal for disposition of the remaining appellate issues.

### 1. *Background Facts*

From time to time, defendant Riverside National Bank (RNB) loaned money to plaintiff, the bank's single largest shareholder and a member of its board of directors. These loans were short-term, interest-only loans, and plaintiff occasionally defaulted on interest payments. In February 1987, RNB's directors met to discuss plaintiff's defaults and the possibility of removing him from the board. The directors adopted a bylaw disqualifying anyone from serving as a director who stood in default to the bank for more than 30 days. Plaintiff, who allegedly had no notice of this special meeting, did not participate in the bylaw's adoption. The board subsequently notified plaintiff that, by reason of his current loan default, he was disqualified from continuing to serve as director.

In March 1987, two news articles appeared which quoted RNB's executive vice-president, defendant Swartz, as saying, among other things, that

plaintiff had been "ousted" from the board because of delinquent loans totalling $714,405.

Following his removal from the board, plaintiff agreed with Bank of Hemet to sell his RNB stock to that bank to obtain money to cure existing defaults and repay the loans from RNB. RNB's president, defendant Billings, thereafter wrote to RNB shareholders describing plaintiff's stock sale agreement as "illegal" and "not in the best interests" of RNB.

### 2. Plaintiff's Causes of Action

Based on the foregoing facts, plaintiff sued defendants for damages allegedly incurred by their tortious conduct. We briefly describe the seven causes of action set forth in plaintiff's complaint, as these allegations are relevant to our inquiry whether the Court of Appeal properly confined its review to the issues surrounding the defamation count.

Plaintiff's first cause of action was based on a theory of "illegal ouster"— plaintiff asserted he was denied access to board meetings and thus was ousted as a director of RNB and denied his rights as shareholder. Plaintiff alleged the newly adopted bylaw violated section 303 of the Corporations Code, which generally prohibits removal of a corporate director prior to the expiration of his term. He also alleged the bylaw amounted to an unlawful "ex post facto provision" when applied to previously incurred loan defaults.

Plaintiff's second cause of action was based on defamation arising from defendants' publication of the information contained in the foregoing news articles and letter to shareholders. Plaintiff alleged damage to his business and reputation, as well as financial losses resulting from being forced to sell his RNB stock at less than fair market value.

Plaintiff's third cause of action was based on "wrongful disclosure of confidential information" and alleged that defendants breached their obligation of confidentiality by conspiring to disclose plaintiff's loan defaults in order to oust him from the RNB board, damage his credit standing, and force him to sell his RNB stock.

Plaintiff's fourth cause of action was based on defendants' tortious breach of the implied covenant of good faith and fair dealing, and alleged that defendants conspired to use plaintiff's loan defaults as an excuse for ousting him from the RNB board, thereby nullifying his right as a shareholder to elect directors, and forcing him to sell his RNB stock.

Plaintiff's fifth cause of action was based on a theory of intentional interference with plaintiff's contractual relationships with RNB as a shareholder and borrower. Plaintiff alleged that defendants' wrongful acts of

removing him from the RNB board and publishing information regarding his loan defaults improperly interfered with those relationships.

Plaintiff's sixth cause of action was based on "interference with contractual relations and prospective advantage," and alleged that defendant's acts interfered with plaintiff's relations with financial institutions other than RNB.

Plaintiff's seventh and final cause of action was based on negligent interference with plaintiff's relations with financial institutions other than RNB.

As to each of the foregoing causes of action, plaintiff sought compensatory and punitive damages in varying amounts for defendants' alleged tortious conduct.

### 3. *General Verdict With Special Interrogatories*

At the completion of the 30-day trial, the jury returned in plaintiff's favor a "general verdict with special interrogatories." As will appear, the jury's responses disclose that the jury found plaintiff had been damaged in various amounts on each cause of action.

Among other questions, the verdict form asked the jury whether either defendant RNB or defendant Billings was liable for *removing* plaintiff from RNB's board, and, if so, what was the "total amount" of plaintiff's damages for such removal. All 12 jurors found that both such defendants were liable, and that the total amount of damage was $2,254,787. The form also asked whether either RNB or Billings was liable for *defaming* plaintiff and, if so, what was the "total amount" of damages as a result thereof. By a vote of 11 to 1, the jury found that both these defendants were liable, and that plaintiff suffered defamation damages in the "total amount" of $604,787.

Other responses found defendants RNB and Billings liable for *breaching the implied covenant* of good faith, to plaintiff's damage in the "total amount" of $1,650,800; that these defendants and other named defendants were liable for *conspiring* to intentionally interfere with plaintiff's contractual relations with RNB, to plaintiff's damage in the amount of $1,622,000; and that defendants RNB and Billings were liable for *interfering* with plaintiff's contracts or relations with other lenders, to plaintiff's total general damage of $2,226,787. Additionally, the jury rendered a special verdict assessing punitive damages against RNB in the amount of $2.3 million and against Billings in the amount of $130,000.

As a result of the jury's general verdict and interrogatories, the trial court entered its judgment ordering that plaintiff recover (1) from defendant RNB, $2,254,787 in compensatory damages and $2.3 million in punitive damages, for a total of $4,554,787; (2) from defendant Billings, the sum of $2,254,787 in compensatory damages and $130,000 in punitive damages, for a total of $2,384,787; and (3) from three other named defendants, the sum of $1 each (as prayed).

### 4. *Court of Appeal Opinion*

On appeal, defendants' 119-page opening brief raised 17 contentions relating to each of the foregoing 7 causes of action. Among other contentions, defendants challenged as erroneous or inadequate the jury instructions covering these causes of action, and also disputed the sufficiency of the evidence in support thereof. The Court of Appeal, however, considered and resolved only those issues pertaining to the defamation cause of action, believing application of the "general verdict rule" (discussed below) made it unnecessary to address any other issues.

The Court of Appeal reasoned that its review of the issues was "simplified" by the principle that " 'a complaint may plead different theories on which relief is sought with legal propriety. . . . Where an appeal is taken [from a general verdict] . . . the reviewing court has the power to disregard particular theories and to affirm the judgment on a theory which is supported by the finding and evidence in order that causes may be disposed of by a single appeal and without further proceedings in the trial court.'. . . (*Crogan* v. *Metz* (1956) 47 Cal.2d 398, 403 [303 P.2d 1029].) In other words, . . . where as here an appeal is taken from a general verdict returned on several counts or theories of recovery, it is presumed that the jury found in favor of the prevailing party on each count or theory of recovery and the judgment must be affirmed so long as any one count or theory of recovery is supported by substantial evidence. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 673 [117 Cal.Rptr. 1, 527 P.2d 353].)" (Fn. omitted.)

The Court of Appeal continued by observing that by reason of the "general verdict rule," it is unnecessary to determine whether every count or theory of recovery is legally valid and supports the general verdict, but only whether any *one* such theory is valid and supports that verdict. As the court stated, "In other words, we must affirm the judgment if we determine there is any theory of recovery which supports the judgment. [Fn. omitted.] This principle pertains even though the measure of damages, and thus the amount of the general damage verdict, might differ under the various theories of recovery pleaded in the complaint. (*Crogan* v. *Metz* [(1956)] 47 Cal.2d [398]

at 404-405 [303 P.2d 1029]; *Gilman* v. *Nemetz* (1962) 203 Cal.App.2d 81, 94 [21 Cal.Rptr. 317].)"

The Court of Appeal explained that it relied on the jury's responses to interrogatories only insofar as they show "the jury found liability and malice in connection with each theory pursued by plaintiff at trial." The appellate court acknowledged that the jury's responses "attributed varying monetary figures to each theory of recovery," and that "[o]nly the damage amount attributed to the . . . 'illegal ouster' [theory] actually equates to the total general verdict damage award." Yet the court stated that it was not bound by the jury's allocation of damages for purposes of applying the general verdict rule because "according to the jury instructions, plaintiff was entitled to recover the same amount of damages under any theory alleged and proved at trial."

The Court of Appeal agreed that the responses to interrogatories were useful to test the general verdict as to the issues of liability and malice, but stated that "we are unable to comprehend the function or import of the special interrogatories regarding damages." In the court's view, "we are not constrained by the damage special interrogatories in resolving the issues raised in this appeal because those interrogatories are meaningless and therefore irrelevant. [¶] . . . [W]e conclude . . . that the general verdicts of liability and damage are supported by plaintiff's defamation count. Consequently we need not address each of defendants' 17 claims of error but instead shall limit our review to those claims which relate directly or indirectly to the 'cause of action' for defamation."

## 5.  *Discussion*

■ As will appear, we disagree with the Court of Appeal's analysis. The jury's responses to the interrogatories clearly disclosed its finding that plaintiff had incurred only $604,787 in compensatory damages from defendants' defamation. The Court of Appeal's limited review and rejection of the defamation issues cannot sustain the entire $2.25 million judgment.

The Court of Appeal's statement that the damage interrogatories were "meaningless and irrelevant" is puzzling. Under section 625 of the Code of Civil Procedure, the trial court is permitted to direct the jury "to find upon particular questions of fact . . . . Where a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly." (See also *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 540-541 [138 Cal.Rptr. 705, 564 P.2d 857] [special verdict or finding primarily used to test validity of general verdict]; *Hurlbut*

v. *Sonora Community Hospital* (1989) 207 Cal.App.3d 388, 403 [254 Cal.Rptr. 840] [same]; *Bond* v. *DeWitt* (1954) 126 Cal.App.2d 540, 544 [272 P.2d 561] [special interrogatory response finding no fraud by defendants deemed inconsistent with general verdict awarding plaintiff damages, where fraud only viable cause of action].) Nothing in section 625 or California case law suggests that the section is inapplicable to special findings regarding damages as were made here. (See *Pressler* v. *Irvine Drugs, Inc.* (1985) 169 Cal.App.3d 1244, 1249 [215 Cal.Rptr. 807] [approving use of special interrogatories to allocate general verdict damages between medical expenses, lost earnings, and general damages].)

■ The "general verdict rule" relied on by the Court of Appeal provides that where several counts are tried, a general verdict will be sustained if any one count is supported by substantial evidence and is unaffected by error, despite possible insufficiency of evidence as to the remaining counts. (See *McCloud* v. *Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 935-936 [97 Cal.Rptr. 910].) The rule is based on the assumption "that the jury found on the cause of action or theory which was supported by substantial evidence and as to which there was no error," an assumption that may be proven incorrect by the special verdict or response to special interrogatories. (*Id.* at p. 936.)

■ Here, the jury's responses to the special interrogatories disclosed its determination that plaintiff was damaged in differing amounts by defendants' tortious activity. Among other responses, the jury found that plaintiff's damages resulting from defendants' defamation amounted to $604,787, those resulting from defendants' breach of the implied covenant totaled $1,650,800, and plaintiff's "total damages" from being removed from the RNB board were $2,254,787. (Inexplicably, the two lesser damage figures add to $2,255,587. Perhaps the $1,650,800 figure was intended to be $1,650,000.)

As indicated in the jury's remaining responses, plaintiff was also damaged in the amount of $1,622,000 by defendants' interference with plaintiff's contractual relations with others, but this damage seemingly overlapped damages plaintiff suffered through breach of the implied covenant and was probably included in the $2,254,787 total damage figure. Using the jury's special finding as to defamation damages to "test" the general verdict, it seems incontrovertible that only a portion (namely, $604,787) of the general verdict of $2,254,787 may be deemed to constitute damages attributable to defendants' defamation.

Plaintiff contends that defendants waived the right to assert any inconsistency between the responses to special interrogatories and the general verdict. According to plaintiff, defendants agreed to the form of the verdict,

declined to request resubmission of any issues to the jury, and failed to raise the supposed inconsistency in their postjudgment motions.

We think plaintiff misconceives the precise nature of the inquiry before us. Our present task is not to reconcile the various responses to the special interrogatories with the general verdict, but to determine whether the Court of Appeal properly affirmed a judgment for $2,254,787 in compensatory damages and $2.3 million in punitive damages by reviewing only those issues pertaining to a $604,787 component of that judgment. Even assuming defendants waived their right to object to the verdict form or to assert inconsistencies in the verdict, the fact remains that the jury specifically found defendants' defamation of plaintiff amounted to only a fraction of the total damages suffered by him. Thus, some appellate issues potentially affecting the remainder of these damages have not been reviewed, including substantial issues underlying plaintiff's theory of illegal ouster. (Defendants' opening brief on appeal appears to contain numerous issues pertinent to causes of action other than the defamation cause.) We conclude that, under such circumstances, reliance on the general verdict rule to limit review of the issues was improper.

The Court of Appeal's reliance on *Crogan v. Metz* (1956) 47 Cal.2d 398, 404-405 [303 P.2d 1029], and *Gilman v. Nemetz* (1962) 203 Cal.App.2d 81, 94 [21 Cal.Rptr. 317], seems misplaced. These cases allow application of the general verdict rule despite variances in the measure and amount of damages under the various theories of recovery. Neither *Crogan* nor *Gilman*, however, involved special findings which assigned specific damage amounts to specific theories of recovery. Neither case suggests that the general verdict rule would apply despite such special findings.

As for the Court of Appeal's statement that under the instructions plaintiff was entitled to recover the same amount of damages under any of plaintiff's various theories, we have reviewed the instructions and none of them would preclude a finding of differing amounts of damage for each theory of recovery. Indeed, as a matter of logic, it would seem unlikely that plaintiff's damages from being *defamed* by defendants would be identical to the damages he incurred from being *ousted* from RNB's board of directors. Unlike the cases cited by plaintiff (e.g., *Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1182 [272 Cal.Rptr. 304]), these theories of recovery seem based on different "primary" rights and duties of the parties.

Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. (*Shell v. Schmidt*

(1954) 126 Cal.App.2d 279, 291 [272 P.2d 82].) Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited. (*Ibid.*)

Thus, for example, in a case in which the plaintiff's only item of damage was loss of commissions, two awards of damages identical in amount—one for breach of contract and the other for bad faith denial of the same contract—could not be added together in computing the judgment. Plaintiff was entitled to only *one* of the awards. (*DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 563-565 [282 Cal.Rptr. 181]; see also *Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 995-996 [149 Cal.Rptr. 119] [impermissible double recovery where no separate evidence supported distinct awards of damages in contract and tort].).

In contrast, where separate items of compensable damage are shown by distinct and independent evidence, the plaintiff is entitled to recover the entire amount of his damages, whether that amount is expressed by the jury in a single verdict or multiple verdicts referring to different claims or legal theories. (See *Pat Rose Associates* v. *Coombe* (1990) 225 Cal.App.3d 9, 20 [275 Cal.Rptr. 1], disapproved on other grounds in *Adams* v. *Murakami* (1991) 54 Cal.3d 105, 116 [284 Cal.Rptr. 318, 813 P.2d 1348] [recovery of sum of (1) out-of-pocket loss recovered under fraud theory and (2) lost profits damages recovered under contract theory permissible where damage items were distinct and entire amount of injury was compensable under fraud theory in any event].)

██ Because the Court of Appeal herein misapplied the general verdict rule, it did not review the jury's responses to the special interrogatories (other than those involving the defamation claim) to determine whether: (1) they were free from prejudicial error, (2) they were supported by substantial evidence, and (3) they were based on separate items of compensable damage so as to justify aggregating them in computing the total amount of the judgment. In order to sustain the judgment against defendants in the stated amount, the Court of Appeal was required to review and uphold a sufficient number of separate damage findings which, when combined, equalled or exceeded the amount of the judgment. This review was not undertaken.

In response to the dissent herein, we note that although the Court of Appeal mentioned the procedural concerns cited by the dissent, the court nonetheless elected to reach the merits of the defamation issues raised on appeal. On remand, the Court of Appeal will be free to dispose of the remaining appellate issues on whatever grounds, procedural or substantive, that court deems appropriate.

The judgment of the Court of Appeal is reversed and the cause is remanded to that court for resolution of the remaining appellate issues.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent for procedural reasons.

First, we should not have granted review of this case. The California Rules of Court give us the discretionary authority to grant review only when "it appears necessary to secure uniformity of decision or the settlement of important questions of law . . . ." (Cal. Rules of Court, rule 29(a)(1).) This case meets neither criterion. Indeed, though I concede its importance to the parties, its public significance is minimal. As the majority opinion illustrates, whatever errors of law the Court of Appeal may have committed in its unpublished opinion, there are both statutes and published case law on point. (See maj. opn., *ante*, pp. 1156-1157.)

Second, having granted review, we should not reach the result the majority do. This case should not be remanded to the Court of Appeal to address the remaining issues. Rather, because the remaining issues appear to be defectively presented on appeal, the Court of Appeal's judgment should be affirmed. The case's chronology indicates that defendants failed to meet the requirements of the appellate court.

Ordinarily a party to civil litigation may not file a printed brief on appeal longer than 40 pages. (Cal. Rules of Court, rule 15(e); cf. *id.*, rule 37(c) [criminal cases].) Defendants moved to file an opening brief of approximately 120 typewritten pages, which they represented to be the equivalent of about 80 printed pages. The Court of Appeal accommodated defendants' request over plaintiff's opposition.[1]

Defendants then filed an opening brief that, according to plaintiff, was not 80 printed pages long, but 109.[2]

The Court of Appeal found that brief unsatisfactory. The court ordered defendants to annotate it because "citations to the record are not included to support factual and procedural matters contained in the Argument sections, pages 40 through 108."

---

[1]Plaintiff correctly observed that "it is harder to write a shorter brief than . . . a longer brief" but that, absent the court rules' limits on the length of briefs "the court would be burdened with briefs [that are] lengthy, repetitive and contain unnecessary verbiage."

[2]I rely on plaintiff's description of the length of defendants' original opening brief, because for reasons that will appear, the record on appeal does not contain it.

In a request for modification, defendants now declare they obtained by telephone the court clerk's permission to file a brief of this size.

Thereupon defendants filed their corrected opening brief. That brief, which the record does contain, is 119 pages long. It is densely composed in what appears to be a 12-point times roman font on 14-point lines.

Remarkably, despite the new brief's density and length, the Court of Appeal found that it still failed to include sufficient references to the record. The court's irritation turned to wrath. In its opinion the court declared it proper to "reduce the issues we must address in this appeal" because of "defendants' near-total failure to demonstrate that the issues asserted on appeal first were raised by defendants in the trial court. In other words, because the 'party challenging a judgment has the burden of showing reversible error by an adequate record' [citation] defendants' claims of error must include appropriate citations to the record showing where the purported error occurred, and if appropriate, that defendants objected to that error in the proceeding below. Defendants, by failing in their opening and reply briefs to provide anything other than cursory citations to the joint appendix in lieu of clerk's transcript or to the reporter's transcript, have failed, almost without exception, to demonstrate [that] error occurred in the trial court. In failing adequately to cite the record, defendants either misperceive the function of appellate review [footnote omitted] or would have us assume the purported error was raised somewhere in the trial court and can be found by reviewing the voluminous joint appendix and reporter's transcript. . . .

"Defendants' oversight would be troublesome in a case which involved only a relatively small trial court record. The record, here, however, is formidable . . . . Assuming defendants were aware of their burden on appeal to demonstrate that defendants complained of the purported error in the trial court, we can only interpret defendants' failure to include appropriate citations to the record as an implicit invitation to this court to ferret out the error ourselves. We decline defendants' invitation."

The Court of Appeal was correct. "An appellate court is not required to search the record to determine whether or not [it] supports appellants' claim of error. It is the duty of counsel to refer the reviewing court to the portions of the record which support appellants' position." (*Green* v. *City of Los Angeles* (1974) 40 Cal.App.3d 819, 835 [115 Cal.Rptr. 685]; see Cal. Rules of Court, rule 15(a).)

Like the majority, I believe the Court of Appeal is entitled on remand to resolve the remaining issues on procedural grounds to the extent the law permits.

Specifically: if defendants did not raise claims of instructional error in the trial court those claims may be waived, depending on whether the asserted

error was one of law and plain on the instruction's face, or rather one of omission (i.e., incompleteness) or excessive generality. (*Mock* v. *Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 333-334 [5 Cal.Rptr.2d 594], quoting *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 948-949 [160 Cal.Rptr. 141, 603 P.2d 58]; *Weller* v. *American Broadcasting Companies, Inc.* (1991) 232 Cal.App.3d 991, 1010 [283 Cal.Rptr. 644].) In the case of a purported omission, the claim of instructional error is not preserved for appeal unless defendants can show they offered and were refused an alternative instruction that would have cured the asserted defect. (See *Weller* v. *American Broadcasting Companies, Inc., supra*, 232 Cal.App.3d at p. 1010.)

And if defendants did not raise objections to evidentiary rulings on the grounds urged on appeal as constituting the basis for error, they have waived those claims. "Failure to make a timely objection or motion to strike inadmissible evidence constitutes a waiver of the right to later complain of its erroneous admission . . . . [Citation.] Parties also waive the right to later contest the admissibility of evidence where counsel fails to state the specific, correct ground or grounds supporting the objection. [Citation.]" (*Mosesian* v. *Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 865 [236 Cal.Rptr. 778].)

Given the foregoing rules, I believe it elementary that defendants were required to explain where in the record they made their objections or, in the case of a plainly erroneous instruction, where the record shows that the error complained of was plain and not one of omission under the facts of the case. (See *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 574 [224 Cal.Rptr. 664, 715 P.2d 624] [plur. opn.].) The Court of Appeal is not required on remand to resolve these remaining issues on the merits if to do so means it must scour through this case's voluminous record to locate the relevant proceedings itself. (*Green* v. *City of Los Angeles, supra*, 40 Cal.App.3d 819, 835.)

I decline to finely parse defendants' 119-page densely printed corrected opening brief or their similarly formatted 40-page reply brief in the Court of Appeal to discover the full extent to which they did or did not support their claims of error with adequate references to the record. I believe the Court of Appeal's determination that defendants' briefing was inadequate, even after the court accommodated them by permitting corrections, deserves our deference.

Accordingly, I cannot sign the majority opinion. My decision not to do so should not be interpreted as a reflection on the merits of the majority opinion's general discussion of the relevance on appeal of special findings on damages. (Maj. opn., *ante*, pp. 1156-1157.) I merely object to the

application of those principles, correct or not, to a case with the procedural posture of this one. We should dispose of the case in plaintiff's favor on procedural grounds.

On April 28, 1993, the opinion was modified to read as printed above.