Filed 1/10/23 Wilgenbusch v. Metalclad Insulation CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RONALD WILGENBUSCH et al., Plaintiffs and Respondents, v. METALCLAD INSULATION LLC., Defendant and Appellant. | A161916 (Alameda County Super. Ct. No. RG19029791) |

Metalclad Insulation LLC appeals from a judgment awarding damages to Ronald and Judith Wilgenbusch for personal injury resulting from Ronald's exposure to asbestos during his military career.[1] The judgment holds Metalclad negligent and strictly liable for Ronald's injury, and includes an award of noneconomic damages totaling $542,500, which represents the percentage of responsibility for Ronald's injury that the jury attributed to Metalclad (7 percent) plus the percentage of responsibility assigned to two other entities that manufactured Metalclad's asbestos products (12 percent each).

---

[1] We use given names to distinguish between the respondents and refer to them collective as the Wilgenbuschs. On June 1, 2022, this court granted the Wilgenbuschs' motion for substitution of Judith as successor in interest to Ronald, who has passed away. (Code Civ. Proc., § 377.31.)

On appeal, Metalclad contends the judgment must be vacated and remanded with directions to reduce the noneconomic damages award to Metalclad's proportionate share of fault (i.e., 7 percent) pursuant to Proposition 51. (Civ. Code, § 1431.1–1431.5; statutory references are to this code, unless another statute is cited.) The trial court found otherwise, applying the rule that Metalclad is strictly liable for noneconomic damages caused by manufacturers of the defective products in Metalclad's chain of distribution. (*Arena v. Owens-Corning Fiberglas Corp.* (1998) 63 Cal.App.4th 1178, 1198 (*Arena*).) We affirm.

## OVERVIEW OF LEGAL PRINCIPLES

In 1986, California voters passed Proposition 51 in order to ameliorate inequities that can arise by applying the common law joint and several liability doctrine to hold a defendant liable for damages attributable to a more culpable joint tortfeasor. (See *Schreiber v. Lee* (2020) 47 Cal.App.5th 745, 751–757 (*Schreiber*).) Section 1431.2, enacted by Proposition 51, provides: "In any action for personal injury . . . based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."
(§ 1431.2, subd. (a).)

"Thus, in an action subject to Proposition 51, each tortfeasor remains jointly and severally liable to the plaintiff for economic damages, but is liable to the plaintiff for only its proportionate share of noneconomic damages." (*Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 102.) " 'With respect to these noneconomic damages, the plaintiff alone now assumes the risk that

2

a proportionate contribution cannot be obtained from each person responsible for the injury.' " (*Henry v. Superior Court* (2008) 160 Cal.App.4th 440, 450.) "However, even in cases seeking recovery for personal injury, property damage, or wrongful death, there are some contexts in which Proposition 51 does not limit a defendant's liability for noneconomic damages" because the defendant's liability is not based on fault but some other policy or legal principle. (*Schreiber, supra*, 47 Cal.App.5th at p. 753.)

In strict liability actions, for example, courts do not always apply Proposition 51. Wholly aside from Proposition 51, our Supreme Court has held that comparative fault principles apply when apportioning liability between a strictly liable party and a negligent party. (See e.g., *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, 736–737; *Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal.3d 322, 330.) But when a plaintiff's injury is attributable to a single defective product, courts have declined to apply Proposition 51 to apportion liability based on fault among tortfeasors in the product's chain of distribution. (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618 (*Wimberly*); *Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 88–89.)

Metalclad intimates that *Wimberly* and *Bostick* create a conflict in the law by holding that Proposition 51 does not apply in strict liability cases, notwithstanding our Supreme Court's directive that comparative fault principles do apply in strict liability cases. However, as Division One of this court has explained, these two lines of authority are not inconsistent. (*Arena, supra*, 63.App.4th at p. 1193.) *Arena*, a strict liability case involving asbestos-related personal injuries, holds that Proposition 51 requires "apportionment (when supported by the evidence), of noneconomic damages between separate products which have caused a plaintiff's injuries," but

3

"defendants who are within the same chain of distribution of a single product remain jointly and severally liable to the plaintiff for the harm caused by that product." (*Ibid*.)

In the present appeal, both parties rely on *Arena*, but they disagree about how it should be applied. We agree that *Arena* is the controlling precedent and are persuaded by its reasoning, which effectuates a "compromise between the inherently contradictory policies of strict products liability, which protects the plaintiff at the expense of a deep-pockets defendant, and Proposition 51, which protects the defendant from paying more than its share of noneconomic damages." (*Arena, supra*, 63 Cal.App.4th at p. 1193.; see *id*. at pp. 1195–1197 [harmonizing *Wimberly, supra*, 56 Cal.App.4th 618]; see also *Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 852–853 (*Wilson*) [following *Arena*].) As we will explain, applying *Arena* leads us to affirm the judgment.

## BACKGROUND

### I. The Wilgenbuschs' Claims and Trial Theories

In August 2019, the Wilgenbuschs filed this action for personal injury and loss of consortium, alleging that Ronald developed mesothelioma caused by exposure to asbestos. Ronald's alleged exposure occurred during his service in the U.S. Navy from 1956 through 1978, while working on ships that underwent repairs at shipyards in San Diego, Long Beach, Seattle, and Pearl Harbor. Metalclad and multiple other entities were named as " 'Product Defendants,' " based on allegations that they were engaged in the business of placing asbestos-containing products into the stream of commerce during the period of Ronald's exposure. The Wilgenbuschs' claims included causes of action for negligence and strict products liability.

4

In July 2020, this case was called for trial. By the time the jury was empaneled, Metalclad was the only remaining defendant. The Wilgenbuschs pursued four theories of liability: (1) strict liability for a product defect; (2) strict liability for failure to warn; (3) negligence based on a failure to warn; and (4) negligence for failure to recall or retrofit a defective product.

At trial, Ronald testified that while serving on ships during his Naval career, he observed repair work that involved the removal and installation of insulation. Ronald did not know the brand name or manufacturer of these insulation products, but he recalled seeing the name "Metalclad" stenciled in red on boxes that contained new insulation.

Other trial evidence showed that Metalclad sold asbestos insulation from at least 1946 until the end of 1973. Prior to 1967, Metalclad sold "Kaylo" brand asbestos insulation manufactured by Owens Corning Fiberglas (Owens Corning). After 1967, Metalclad switched to asbestos insulation manufactured by Fiberboard under the brand name Pabco (Pabco).

## II. Jury Instructions Regarding Allocating Harm

On September 16, 2020, after the close of evidence, the court held a hearing to discuss jury instructions. The Wilgenbuschs requested that the court instruct the jury Metalclad could not allocate fault for harm caused by asbestos-containing products it sold to the manufacturers of those products. Metalclad objected, arguing that this "single product rule," which prevents shifting of fault within the chain of distribution, applies only to strict liability; it does not apply to negligence, so Metalclad had a right under Proposition 51 to "shift fault based on negligence to others in the chain of distribution of the products that it distributed." Accordingly, Metalclad proposed a special verdict form that would require the jury to allocate

5

responsibility for Ronald's injury among several entities, including Owens Corning and Pabco.

After extensive argument, the court ruled that because the Wilgenbuschs were alleging negligence as well as strict liability, Metalclad had a right to claim comparative negligence. Therefore, Owens Corning and Pabco would be included on a list of entities among which the jury would be asked to allocate responsibility for Ronald's injury, and the court would give a revised version of the special instruction proposed by the Wilgenbuschs, which would state that Metalclad cannot allocate *strict liability* fault to the manufacturers of products its sold.

On September 17, the trial court instructed the jury.[2] After instructing regarding general principles of law, the court turned to "the specific claims in this case and the standards that apply to those claims." The court defined the basic standard of care under negligence law and instructed the jury regarding the rule that a defendant cannot avoid responsibility for its own negligence just because some other factor was a substantial cause of harm. Then it gave separate instructions addressing each of the plaintiffs' theories of liability.

After the jury was instructed regarding the elements of plaintiffs' two strict liability theories, the court addressed Metalclad's defenses. Metalclad claimed first that Ronald's own negligence contributed to his harm. The court instructed that if Metalclad proved this defense, Ronald's damages would be reduced by the jury's "determination of the percentage of [Ronald's]

---

[2] The Appellant's Appendix contains copies of several jury instructions, which are not marked in any way to indicate that they were filed with the court or delivered to the jury. These instructions appear to correspond to instructions that were read to the jury, but they are not a complete set, and they are not in the order that instructions were actually delivered.

responsibility," but that the court rather than the jury would "calculate the actual reduction." Metalclad also contended that the negligence of other entities contributed to Ronald's harm. The jury was instructed regarding the elements of this defense, and then the court gave three follow-up instructions, which are relevant to our resolution of this appeal.

First, the court instructed about a question on the special verdict form that would ask the jury to allocate responsibility for Ronald's injury: "If you find that the negligence or fault of more than one person, including Metalclad Insulation LLC, [Ronald], and any of the other entities listed in the jury verdict form, was a substantial factor in causing [Ronald's] harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person [or entity] listed on the verdict form. The percentages must total 100 percent." Next, the jury was instructed that it would be asked to make a separate finding regarding Ronald's total damages, if any, and in determining the total amount of damages, it should not consider any person's or business entity's "assigned percentage of responsibility." Then, the court instructed the jury that "Metalclad cannot allocate fault in strict liability to the manufacturers of asbestos insulation products it sold."[3]

---

[3] The instruction delivered orally by the trial court stated: "Metalclad Insulation cannot allocate fault or strict liability to the manufacturers of asbestos insulation products it sold." However, an instruction in the Appellant's Appendix states: "Metalclad cannot allocate fault in strict liability to the manufacturers of the asbestos insulation products it sold." We base our review on the wording of the written instruction for two related reasons. The jury was instructed to treat the written instructions as "the controlling instructions," and the parties agree that the instruction in the Appellant's Appendix was delivered to the jury.

7

## III.   The Jury's Special Verdict

On September 28, 2020, the jury returned a verdict in favor of the Wilgenbuschs, recording findings on the special verdict form. The jury found that Ronald was exposed to asbestos from insulation products sold by Metalclad, and that Metalclad is liable for Ronald's injuries pursuant to three of the four theories the Wilgenbuschs presented at trial.

First, Metalclad is strictly liable for a design defect in its asbestos insulation products. Those products failed to perform as safely as an ordinary consumer would expect, and the products' failure to perform safely was a substantial factor in causing Ronald's harm.

Second, Metalclad is strictly liable for failure to warn about potential risks of using the asbestos insulation products it sold. These risks would not have been recognized by an ordinary consumer but were known or knowable at the time Metalclad's products were manufactured, distributed, or sold. These risks presented a substantial danger when the products were used in a foreseeable way, and the lack of sufficient warnings was a substantial factor in causing harm to Ronald.

Third, Metalclad is liable in negligence for failing to adequately warn consumers about the danger or instruct on the safe use of the asbestos insulation products it sold. It knew or should have known its products were dangerous and that users would not realize this danger. A reasonable manufacturer, distributor or seller would have provided adequate warning, and Metalclad's failure to warn was a substantial factor in causing harm to Ronald.

Because it found Metalclad liable for the Wilgenbuschs' harms and losses, the jury completed an additional section of the special verdict form assessing damages. The jury found that economic damages for medical

expenses, income loss, and lost household services totaled $795,000. The Wilgenbuschs' noneconomic damages totaled of $1,750,000.

The jury also completed a section of the special verdict form titled "Apportionment," which asked: "What percentage of responsibility, if any, for [Ronald's] mesothelioma do you assign to each of the following? (The total must equal 100%):" This question was accompanied by a list of names, which includes Metalclad, Ronald, the U.S. Navy, and nine other companies, including Owens Corning and Pabco.

The jury assigned 4 percent responsibility for Ronald's mesothelioma to Ronald, 51 percent responsibility to the U.S. Navy, 7 percent responsibility to Metalclad, 12 percent responsibility to Owens Corning, and 12 percent responsibility to Pabco. It divided the remaining 14 percent among other companies on the list.

## IV. Post-Verdict Motions and Entry of Judgment

After the verdict was returned, the parties failed to agree on a proposed judgment. On October 20, 2020, the Wilgenbuschs filed an ex parte application for entry of judgment nunc pro tunc to September 28 for the full amount of economic damages and 7 percent of the noneconomic damages. Plaintiffs argued that backdating the judgment was appropriate because it should have been entered immediately after the jury reached a verdict in order to preserve Ronald's right to noneconomic damages in the event of his passing,[4] and they proposed entering damages figures that could be adjusted via an amended judgment once issues regarding the final amount of the

---

[4] When the jury decided this case, a plaintiff's death prior to entry of judgment would have extinguished the plaintiff's right to recover noneconomic damages. (See former Code Civ. Proc., § 377.34; *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 298–303; see e.g., *Cadlo v. Metalclad Insulation Corp.* (2007) 151 Cal.App.4th 1311, 1318 (*Cadlo*).)

judgment were resolved. Opposing this request, Metalclad faulted plaintiffs for the delay in entry of judgment. The court ordered the parties to attempt to agree on a proposed judgment, and if they could not resolve their issues to submit briefs to the court.

On November 3, the Wilgenbuschs filed a motion for "Apportionment of Liability," requesting that the 24 percent responsibility for Ronald's injury that the jury assigned to Owens Corning and Pabco be allocated to Metalclad for purposes of calculating the noneconomic damages award. Metalclad opposed this motion, arguing that pursuant to Proposition 51, Metalclad was not jointly and severally liable for the percentage of harm that the jury attributed to Owens Corning and Pabco. Both parties relied on *Arena, supra*, 63 Cal.App.4th at page 1198, but they adopted materially different views about how to interpret the jury's allocation of responsibility. The Wilgenbuschs argued that the percentages attributed to Owens Corning and Pabco pertained to asbestos-containing products in Metalclad's chain of distribution. Metalclad disagreed, arguing that the percentages pertained to products manufactured by Owens Corning and Pabco that were distributed *outside* Metalclad's chain of distribution.

Following a hearing, the trial court issued a "Ruling re Entry of Judgment," which was filed on November 13, 2020. The order addresses the two issues that the parties failed to resolve after meeting and conferring about the proposed judgment.

First, the court found that Metalclad could not apportion to Owens Corning and Pabco part of the damages accruing from plaintiffs' strict liability claim. The court reasoned that the jury's allocation of responsibility applied to Metalclad's liability for negligence, but not to Metalclad's strict liability for causing Ronald's injury. Because the Wilgenbuschs prevailed on

10

both theories, they were entitled to a judgment reflecting the greater amount, and under strict products liability law, Metalclad could not "reduce its share of damages based on the asserted greater fault of other entities" in the chain of distribution for its own products. (Citing *Wimberly, supra,* 56 Cal.App.4th at p. 633.)

In reaching this conclusion, the court recognized that if Ronald was exposed to asbestos products manufactured by Owens Corning or Pabco that were outside Metalclad's chain of distribution, Metalclad would not be strictly liable for the harm attributed to those products. (Citing *Arena, supra,* 63 Cal.App.4th at p. 1198.) However, Metalclad did not cite any evidence to show that Ronald was actually exposed to an asbestos product manufactured by either entity that was outside Metalclad's chain of distribution. Because the only finding supported by the evidence was that Ronald was exposed to Owens Corning and Pabco products in Metalclad's chain of distribution, "the court apportion[ed] 31% of the non-economic damages to Metalclad."

The second unresolved issue before the court pertained to the Wilgenbuschs' request to enter the judgment nunc pro tunc, which the court denied. It found that the delay in entry of judgment was attributable to a "protracted meet and confer process," and that plaintiffs were responsible for a significant portion of the delay. Moreover, there were no special equity considerations, such as those that arise when a plaintiff dies prior to entry of judgment.

On November 20, 2022, a judgment was filed that requires Metalclad to pay the Wilgenbuschs damages totaling $1,012,044. This amount includes $469,544 in economic damages, which reduces the jury's award to reflect prior settlements and Ronald's comparative fault. The judgment also

11

requires Metalclad to pay 31 percent of the noneconomic damages award, i.e., $542,500.[5]

## DISCUSSION

Metalclad contends the trial court erred by refusing to limit the noneconomic damages award to the "small percentage of fault" that the jury attributed to Metalclad. There are three strands to this claim of error, which frame our discussion: (1) under Proposition 51, Metalclad is not liable for noneconomic damages caused by Ronald's exposure to an asbestos product Metalclad did not distribute; (2) the jury's allocation of responsibility for Ronald's injury constitutes a finding that Metalclad is liable for only 7 percent of Ronald's noneconomic damages; and (3) the trial court lacked authority to enter a judgment that does not conform to the jury's verdict.

We begin with Metalclad's argument that the judgment violates Proposition 51. Citing *Arena* and its progeny, Metalclad contends Proposition 51 requires apportionment of liability when different asbestos products distributed through different distribution chains contributed to the plaintiff's asbestos-related injury. We agree. (*Arena*, *supra*, 63 Cal.App.4th at pp. 1193–1199; *Wilson*, *supra*, 81 Cal.App.4th at pp. 851–859.) However, Metalclad's logic falters when it argues further that *Arena* precludes apportioning 31 percent of the Wilgenbuschs' noneconomic damages to Metalclad. According to this argument, "[i]f the jury found that [Ronald] was exposed to Owens Corning and Pabco products from sources other than Metalclad, it was appropriate . . . to apportion responsibility to Owens Corning and Pabco directly."

_____

[5] On December 18, 2022, the judgment was amended pursuant to the parties' stipulation to correct errors unrelated to the present appeal.

12

This *what if* argument is an insufficient basis upon which to claim error on appeal. "A judgment or order of a lower court is presumed to be correct on appeal." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

In the present case, the jury was not asked to decide if Ronald was exposed to Owens Corning and Pabco products outside Metalclad's chain of distribution, and the special verdict does not address this issue at all. Instead, the disputed issue at trial was whether Ronald was actually exposed to the asbestos insulation products that Metalclad distributed, products which were manufactured by Owens Corning or Pabco. The special verdicts show that the jury resolved this dispute in favor of the plaintiffs. It found that Ronald "was exposed to asbestos from asbestos insulation products sold by Metalclad Insulation LLC," and that Metalclad's asbestos insulation products caused Ronald substantial harm because they were defectively designed and Metalclad failed to warn consumers about the potential risks of substantial danger associated with their use and misuse. Metalclad does not challenge the sufficiency of the evidence to support these findings. And it concedes on appeal that it may be held jointly and severally liable under strict liability law for all injury caused by products in its chain of distribution. (*Arena, supra,* 63 Cal.App.4th at pp. 1193, 1198.) Thus, contrary to Metalclad's appellate argument, the noneconomic damages award does not violate Proposition 51.

The second strand of Metalclad's claim is that the special verdict constitutes a substantive finding that Ronald was exposed to Owens Corning and Pabco products that were not in Metalclad's chain of distribution. According to this argument, "it must be assumed that the jury's 7% apportionment of responsibility to Metalclad included all responsibility attributable to the products Metalclad distributed. And in apportioning 12% responsibility to each of Owens Corning and Pabco, the jury necessarily found that this responsibility fell outside of Metalclad's chain of distribution." We are not persuaded.[6]

Metalclad reasons that the percentage allocations must be construed as a cap on Metalclad's liability for noneconomic damages because the jury was instructed that Metalclad could not apportion fault in strict liability to manufacturers of the asbestos products it sold. Metalclad construes this instruction as a clear directive to the jury to apportion responsibility to Owens Corning and Pabco for products that "fell outside of Metalclad's chain of distribution." We disagree. For one thing, the instruction did not tell the jury to do anything. It advised that Metalclad could not apportion its strict liability to the manufacturers of the products that it sold. Furthermore, Metalclad errs by reading this instruction "in a vacuum" without considering the other instructions to which it relates. (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 458 (*Woodcock*).)

---

[6] Metalclad attempts to eschew the presumption in favor of the judgment by pointing out that there is no presumption in favor of upholding a special verdict that contains inconsistent findings. (Citing *Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 542.) This principle does not assist Metalclad because it is not challenging the special verdict, but argues instead that the judgment does not conform to the verdict.

As discussed in our background summary, the jury was instructed that because Metalclad claimed that the *negligence* of Ronald and of other entities was a substantial factor in causing Ronald's mesothelioma, the jury would be asked to assign "percentages of responsibility to each person [or entity] listed on the verdict form" and that the percentages had to total 100 percent. The jury was also instructed not to consider these assigned percentages when assessing damages. If Metalclad proved its contributory negligence defense, the court rather than the jury would "calculate the actual reduction." And if the Wilgenbuschs proved their strict liability claims, Metalclad could not allocate fault to manufacturers of products its sold.

Considered together, these instructions required the jury to assign percentages of responsibility among a list of people and entities that included but was not limited to Metalclad, Owens Corning and Pabco, based on a qualitative assessment of each person's or entity's respective breach of the standard of care. This exercise had nothing to do with whether the asbestos products to which Ronald was exposed were distributed in or outside Metalclad's chain of distribution. As best we can determine, that issue was never even discussed with the jury. For example, it appears the jury heard neither evidence nor argument about the extent to which Ronald's exposure to products *outside* Metalclad's distribution chain involved Owens Corning or Pabco products. Further, the jury was told that the court rather than the jury would use these percentages to adjust the damages award, if need be. Metalclad ignores all of these circumstances, which undermine its contention that the allocations in the special verdict form constitute a finding regarding the manufacturers' percentage of fault for products outside Metalclad's distribution chain.

The final strand of Metalclad's claim is that the trial court lacked authority to enter a judgment that does not conform to the verdict. Metalclad bases this argument on section 664 of the Code of Civil Procedure, which states: "When trial by jury has been had, judgment must be entered by the clerk, in conformity to the verdict within 24 hours after the rendition of the verdict, whether or not a motion for judgment notwithstanding the verdict is pending, unless the court order the case to be reserved for argument or further consideration, or grant a stay of proceedings." Together with amicus curie Coalition for Litigation Justice, Inc., Metalclad argues that section 664 and cases applying this statute have long held that a trial court is powerless to " 'substitute [its] judgment for that of the jury and enter a judgment which is not based upon the verdict . . .' " (Quoting *City & County of San Francisco v. Superior Court* (1928) 94 Cal.App. 318, 321 (*San Francisco v. Superior Court*).)

First, because section 664 is directory rather than mandatory, it is not necessary to the validity of the judgment that it be entered within 24 hours. (*Churchill v. Louie* (1902) 135 Cal. 608, 612; *Cadlo, supra,* 151 Cal.App.4th at p. 1319.) Second, Metalclad and amicus curie misconstrue *San Francisco v. Superior Court*, a case that discusses situations in which a judgment may differ from a verdict. (*San Francisco v. Superior Court, supra*, 94 Cal.App. at pp. 321–322.) Regardless, Metalclad fails to demonstrate that the judgment does not conform to the verdict, and amicus curie does not even address this substantive issue.

Metalclad acknowledges that when a special verdict is ambiguous, the trial court has authority to interpret it by considering the language of the verdict in connection with the pleadings, evidence and instructions. (*Woodcock, supra*, 69 Cal.2d at pp. 456–457.) But it argues that the trial

16

court had no such authority here because the special verdict unambiguously limits Metalclad's liability to 7 percent of the Wilgenbuschs' noneconomic damages. Again, we disagree.

The special verdict question asked the jury to apportion responsibility for an injury resulting from the failure to exercise reasonable care, not to quantify percentages of liability for the Wilgenbuschs' noneconomic damages. To the extent there was any ambiguity as to this issue, the record shows that the trial court's ruling is supported by the language of the verdict, the pertinent instructions, and the evidence, as we have discussed. The trial court also explained that since the Wilgenbuschs prevailed on both of their claims—negligence and strict liability—they are entitled to a judgment that reflects the greater amount of damages. (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1159; see also *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 702.) And, as Metalclad concedes, Metalclad is jointly and severally liable under strict liability law for all injury caused by asbestos insulation products in its chain of distribution. (*Arena, supra*, 63 Cal.App.4th at pp. 1193, 1198.) Thus, the trial court's construction of the special verdict is supported by the law and the evidence, and the judgment does conform to the verdict.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Wilgenbusch et al. v. Metalclad Insulation LLC.* (A161916)

17