Filed 3/25/24  Hollywood Garden v. Li CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| HOLLYWOOD GARDEN, LLC, Plaintiff and Respondent, v. JI LI, Defendant and Appellant. | B322003 (Los Angeles County Super. Ct. No. BC723015) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

InHouse Co. Law Firm, Alexander Chen and Katja M. Grosch for Defendant and Appellant.

Fisher, Klein & Wolfe, David R. Fisher; Greines, Martin, Stein & Richland and Jeffrey Gurrola for Plaintiff and Respondent.

————————————

## INTRODUCTION

Hollywood Garden, LLC (Hollywood Garden or the LLC) sued its former managing member, Ji Li, for forging corporate documents to secretly encumber its sole asset, real property located on Hollywood Boulevard in Los Angeles (the Property), with a $4 million hard money loan. The loan's onerous terms meant that after the LLC defaulted it eventually came to owe the lender more than $12 million in principal, interest, and late fees.

Nearly three years into the case, Li's counsel withdrew. Li then failed to appear for his deposition three times, including twice after being specifically ordered by the court to do so. The LLC moved for terminating sanctions, which the trial court granted, finding Li willfully and repeatedly failed to appear for deposition. After a prove-up hearing, the court entered a default judgment against Li, awarding the LLC $4 million plus prejudgment interest, costs, and attorney's fees.

Li appeals, contending that the court erred in granting terminating sanctions for various reasons, including that Li was not represented by counsel during the relevant period and made an 11th hour offer before terminating sanctions issued to appear for deposition. We conclude substantial evidence supports the trial court's finding that Li purposefully failed to comply with multiple orders that he appear for deposition, and that the court acted within its discretion in imposing terminating sanctions.

Li also contends we should reverse the default judgment because it resulted in a duplicative recovery for another LLC member, Kai Hou Liang, who had recovered his own judgment against Li in a prior lawsuit. We find no merit in Li's claim of duplicative recovery, and therefore affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Agreement to Fund the LLC and the Unauthorized $4 Million Loan**

In March 2016, Li, Liang, and a third individual, Yong Bai, agreed to invest in the LLC for the purpose of purchasing and developing the Property.  The Property's purchase price was $9.5 million.  The parties executed two agreements—a "Framework Agreement" and an LLC "Operating Agreement."  Both agreements provided that Liang would invest $7.3 million, Li would invest $4.7 million, and Bai would invest $1.3 million, and based on these investments Liang would own 51 percent of the LLC, Li would own 40.3 percent, and Bai would own 8.7 percent.  The parties agreed the LLC would use the invested funds to purchase the Property free and clear of any liens, and then to develop it.

Liang made his initial $5.48 million investment.[1]  However, neither Li nor Bai made their promised investments.  Instead, in March and April 2016, Li used Liang's investment to make two non-refundable deposits on the Property totaling $4.8 million.  Then, in May 2016, Li secretly obtained a $4 million hard money loan from Lone Oak Fund, LLC (Lone Oak), secured by the Property, to complete the purchase along with additional money diverted from Liang's investment.  Li obtained the loan in the LLC's name without Liang's knowledge or consent, and forged Liang's signature on a corporate resolution authorizing the loan.

---

[1] The Framework Agreement provided that the funding would be made in phases, with Liang contributing $5.48 million as his first "installment."

The loan required the LLC to make monthly interest payments calculated at an annual rate of 7.9 percent, and to repay the principal and pay all accrued interest by the "[m]aturity [d]ate" of April 30, 2017. In the event of default, the interest rate increased to 24 percent. In addition, the loan provided for a late charge of 10 percent on any amount of interest or principal not paid within 10 days of the applicable due date.

The purchase transaction closed in May 2016. As part of the transaction, Li caused the LLC to pay $120,035 in origination fees and points to Lone Oak and a loan broker. Li then caused the LLC to make interest payments on the loan. The LLC did not have sufficient funds to pay off the loan by the maturity date, so in April 2017 Li agreed with Lone Oak to extend the loan's maturity date for one year, to April 30, 2018, with a modified interest rate of 8.1 percent. Li caused the LLC to pay Lone Oak $50,000 for the modification.

In July 2017, having discovered what Li had done, the other LLC members voted to remove him as manager.

When the loan came due in May 2018,[2] the LLC defaulted. As a result, the 24 percent interest rate became applicable and late payment fees began to be imposed.

## B.    Liang Sues Li and Bai

On June 15, 2018, Liang filed the *Liang v. Li* lawsuit against Li and Bai for fraud and related claims. After trial, a jury found in Liang's favor. The trial court imposed a constructive trust on Li's ownership interest in the LLC as a remedy for his unjust enrichment in owning a share of the LLC

---

[2] Another company, BCP, Inc., purchased the loan from Lone Oak on April 2, 2018, prior to the extended maturity date.

4

despite not contributing his promised investment. Following an appeal, Liang ultimately was awarded $2 million in compensatory damages and $200,000 in punitive damages; we also affirmed the constructive trust transferring Li's LLC membership interest to Liang. (*Liang v. Li* (Nov 10, 2022, B305549) [nonpub. opn.].)

The $2 million amount compensated Liang for being fraudulently induced to invest $5.48 million in the LLC and, as a result, losing the opportunity to invest that money elsewhere and obtain a profit; the award compensated Liang for the loss of use of his investment money through the time of trial, which took place in August 2019.

## C. The LLC Sues Li

The LLC filed a separate lawsuit against Li and Bai on September 24, 2018. It asserted claims for breach of the Operating Agreement, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and declaratory relief. The LLC alleged that it was still in default on the loan and had incurred damages of "at least" $7,019,000. As the constructive trust remedy had not yet been imposed, the LLC also sought a declaration that Li and Bai held no membership interest in the LLC because they had failed to make their promised capital contributions.

Li filed an answer on February 19, 2019.[3]

---

[3] Bai did not respond to the complaint and the court entered his default on April 9, 2019. The LLC's claims against Bai are not at issue in this appeal.

5

**D. Li Repeatedly Fails to Appear for His Deposition**

On August 10, 2021, Li's attorneys, Park & Lim, filed a motion to be relieved as counsel in the LLC's lawsuit. The motion was set for hearing on September 10, 2021. At that point, trial was scheduled for February 14, 2022.

On August 24, 2021, the LLC served Li, through his counsel, with a notice of his deposition for September 14, 2021.[4] Li did not object to the notice.

On September 10, 2021, the trial court granted Park & Lim's motion to be relieved. The court's order relieving the firm did not become effective until Park & Lim filed a proof of service of the court's order on Li. (See Cal. Rules of Court, rule 3.1362(e) ["The court may delay the effective date of the order relieving counsel until proof of service of a copy of the signed order on the client has been filed with the court"].)

Neither Li nor any attorney from Park & Lim appeared for the deposition on September 14, 2021. That day, the LLC's counsel e-mailed Park & Lim asking for alternative dates for the deposition; an attorney at Park & Lim responded that the firm did not have authority from Li to commit to a deposition date.

Li's appellate briefing indicates that soon thereafter in September 2021, Park & Lim were no longer representing him. We treat this as an admission. (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1152 [briefs " ' "are reliable indications of a party's position on the facts as well as the law,

---

[4] The LLC had previously served a deposition notice on Li on May 6, 2021. Li, through his counsel, had objected to that deposition notice on the ground the deposition date was not acceptable, and the LLC apparently took no further action on that initial notice.

and a reviewing court may make use of statements therein as admissions against the party" ' "].)  This accords with the proceedings below in which Li, the LLC, and the court understood that Li was unrepresented soon after the court granted Park & Lim's motion to be relieved.

On September 16, 2021, the LLC's counsel e-mailed Li personally indicating Li had failed to appear for his deposition and requesting he provide his availability for an informal discovery conference (IDC) with the court.  On September 22, 2021, having not received any response, counsel sent Li a letter by overnight delivery again requesting his availability for an IDC.  Li did not respond.

On September 29, 2021, the LLC moved to compel Li's deposition and for monetary sanctions.  Li did not file any opposition.  On October 29, 2021, the trial court heard the motion and ordered Li to appear for his deposition by November 12, 2021, and to pay $1,343.85 in sanctions.  Li did not appear at the hearing.

The LLC served Li with a notice of the court's order along with a notice of deposition for November 12, 2021.  Li did not serve an objection to the deposition notice or contact the LLC's counsel about it.  Li did not appear for his deposition on November 12, 2021.

The LLC filed a motion for terminating sanctions for Li's failure to appear for his court-ordered deposition.  Li did not file any opposition or appear at the hearing, which was held December 13, 2021.  The trial court denied the motion, finding it premature to issue terminating sanctions, in part because Li was a pro per litigant at the time.  However, the court stated that "should . . . Li continue to flaunt this [c]ourt's discovery orders, a

7

future motion by [the LLC] for terminating sanctions might be granted."

On December 10, 2021, the LLC moved to compel Li's deposition, for additional monetary sanctions, and for evidentiary or terminating sanctions in the event Li failed to appear for deposition. The hearing was scheduled for January 5, 2022.

On December 15, 2021, the LLC filed an ex parte application to advance the hearing on its motion to compel because of the approaching February 14, 2022 trial date. Li filed an opposition, contending that advancing the hearing date was unnecessary and, due to his busy schedule managing various projects, he did not have time to prepare an opposition to the motion to compel on an expedited schedule.

The next day, the trial court held a hearing, denied the application, and continued the trial date to April 18, 2022. Li appeared at the hearing to oppose the application.

On January 5, 2022, the trial court granted the LLC's motion to compel Li's deposition and imposed $2,002.50 in additional monetary sanctions, but declined to prospectively impose evidentiary or terminating sanctions in the event Li failed to appear for deposition. Li did not file an opposition or appear at the hearing.

The LLC served Li with a notice of the trial court's order and a notice of deposition for January 14, 2022. Li did not serve any written objection to the deposition notice or request a different date. Li failed to appear at the January 14, 2022 deposition.

**E. The Trial Court Grants Terminating Sanctions**

On February 3, 2022, the LLC moved for terminating sanctions or, in the alternative, evidentiary sanctions and/or an

order compelling Li's deposition, and further monetary sanctions; the motion was set for hearing on March 3, 2022.  The LLC relied on evidence that Li had failed to appear for his deposition three times, including twice after being ordered to appear, and had failed to pay the monetary sanctions imposed by the court.

Li, through a limited scope counsel, filed an opposition to the motion for terminating sanctions on February 22, 2022.[5]  The opposition asserted Li had now offered to appear for his deposition, but the LLC's counsel had declined, and that he had sent a check to pay the sanctions previously awarded.  The opposition further contended that Li's failure to attend the depositions was not willful, and that "given L[i]'s lack of fluency in reading the English language and his prior counsel's abrupt withdrawal without giving L[i] clear communication on the next steps, whether or not he received actual notice is debatable."  In a declaration, Li's limited scope counsel averred, "My experience with L[i] has convinced me that he does not fully comprehend the substance or legal significance of what he reads in English and is reluctant to admit to that deficiency."  Li also submitted his own declaration in which he averred only that he had caused the sanctions to be paid; he did not provide sworn testimony as to any of the other claims in the opposition.

At the hearing, Li's counsel contended that Li's business organization was in "disarray" and Li did not know what was going on with respect to the lawsuit.  Counsel asserted that, although Li appeared to understand English, he failed to recognize the seriousness of the situation due in part "to his

---

[5] Although the opposition was untimely, the court indicated at the hearing that it had considered the opposition.

9

ability to comprehend English." Counsel requested that, if the court concluded Li's conduct had been willful, it consider evidentiary sanctions instead of terminating sanctions.

The court noted that because trial was set to commence in about a month and Li would apparently not be represented by counsel at trial (since his current counsel was representing Li only in a limited capacity), if it issued evidentiary sanctions then a judgment against Li appeared inevitable. Li's counsel responded that another attorney, who was currently "stuck in Russia," was purportedly willing to represent Li at trial.

The court ultimately decided to grant terminating sanctions. The court observed that Li had not submitted any declaration or other evidence to explain his conduct, and found that Li had made "a conscious decision to ignore this court's efforts [and i]gnore this court's orders."

After the court announced its ruling, it allowed Li to make a statement. Li indicated that he had limited legal knowledge and did not know he "need[ed] to go to court for deposition." He claimed that he could not find a lawyer "during the pandemic period" because he had personal issues and was dealing with many business transactions. At the conclusion of Li's statement, the court indicated that it did not find Li credible.

The court later set forth its ruling in a minute order, stating in part, "No explanation has been provided to the [c]ourt for [Li's] absences at three depositions, two of which were [c]ourt-ordered. Twice this [c]ourt ordered Li to attend depositions; twice Li ignored the [c]ourt's orders. Trial is scheduled in this matter to begin in forty-six (46) days, on April 18, 2022." The court also noted that Li had not provided any evidence to support his claims that he lacked fluency in reading English or that his

10

prior counsel did not explain what would occur in the litigation after they withdrew.

## F. The LLC Obtains a Default Judgment

On April 26, 2022, the LLC filed an application for default judgment. Seeking compensatory damages associated with the loan, the LLC adduced evidence that Li was not authorized to incur the debt, and the LLC was supposed to operate without debt. It also adduced evidence that, due to the short term of the loan, the high interest rate, and the late payment penalties that became applicable when the LLC defaulted, by April 2022 the balance due increased to $12,393,546.68—$4 million in principal with the remainder from accrued interest and late fees. Although the LLC asserted that it was entitled to damages for this entire amount, it indicated that it was only requesting a judgment for $4 million because it was also requesting a declaration that Li had no ownership interest in the LLC due to his failure to make his promised investment.

The trial court entered a judgment in favor of the LLC, and against Li, for $4 million in compensatory damages, $2,380,274 in prejudgment interest, $151,306.50 in attorney's fees pursuant to the Operating Agreement, and $14,936.49 in costs, for a total of $6,546,516.99. The court declared Bai's membership interest in the LLC void *ab initio* but did not include any declaratory relief as to Li's membership interest.[6]

---

[6] At a hearing on the default judgment application, the trial court expressed concern that declaring Li had no ownership interest in the LLC would be inconsistent with the constructive trust it had imposed in the *Liang v. Li* case transferring Li's LLC membership interest to Liang.

11

Li timely appealed on June 29, 2022.

## DISCUSSION

We first consider Li's challenge to the trial court's grant of terminating sanctions, and then address his contention that the judgment entered by the court resulted in a double recovery to Liang.

### A. Li's Challenge to the Terminating Sanctions

#### 1. *Standard of Review*

" 'We review the trial court's order [imposing terminating sanctions] under the abuse of discretion standard and resolve all evidentiary conflicts most favorably to the trial court's ruling. We will reverse only if the trial court's order was arbitrary, capricious, or whimsical. It is appellant's burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings. [Citation.] We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent.' [Citation.]" (*Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702; see *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991 ["Imposition of sanctions for misuse of discovery lies within the trial court's discretion, and is reviewed only for abuse"].) We defer to any credibility findings made by the trial court. (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51.)

#### 2. *Governing Legal Principles*

"Misuses of the discovery process include . . . [¶] . . . [¶] . . . [f]ailing to respond or to submit to an authorized method of discovery [and] [¶] . . . [¶] . . . [d]isobeying a court order to provide

12

discovery." (Code Civ. Proc., § 2023.010, subds. (d) & (g).)[7]
Pursuant to section 2025.450, subdivision (h), if a party fails to
appear for deposition after being ordered to do so, "the court may
make those orders that are just, including the imposition of an
issue sanction, an evidence sanction, or a terminating sanction
under Chapter 7 (commencing with [s]ection 2023.010)." Under
section 2023.030, subdivision (d)(4), "The court may impose a
terminating sanction by . . . [¶] . . . [¶] . . . [a]n order rendering a
judgment by default against" the offending party.

"The discovery statutes evince an incremental approach to
discovery sanctions, starting with monetary sanctions and ending
with the ultimate sanction of termination. . . . If a lesser sanction
fails to curb misuse, a greater sanction is warranted: continuing
misuses of the discovery process warrant incrementally harsher
sanctions until the sanction is reached that will curb the abuse."
(*Doppes v. Bentley Motors, Inc.*, *supra*, 174 Cal.App.4th at p. 992.)
"The trial court has broad discretion in selecting discovery
sanctions, subject to reversal only for abuse. [Citations.] The
trial court should consider both the conduct being sanctioned and
its effect on the party seeking discovery and, in choosing a
sanction, should ' "attempt[] to tailor the sanction to the harm
caused by the withheld discovery." ' [Citation.] The trial court
cannot impose sanctions for misuse of the discovery process as a
punishment. [Citation.]" (*Ibid*.)

" 'A decision to order terminating sanctions should not be
made lightly. But where a violation is willful, preceded by a
history of abuse, and the evidence shows that less severe

---

[7] Unspecified statutory references are to the Code of Civil
Procedure.

13

sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]" (*Doppes v. Bentley Motors, Inc.*, *supra*, 174 Cal.App.4th at p. 992, fn. omitted.)

3. *The Trial Court Did Not Abuse Its Discretion in Imposing Terminating Sanctions*

The trial court acted within its discretion in imposing terminating sanctions.  Lesser sanctions and warnings had failed to ensure Li's compliance with deposition notices.  Li failed to appear on September 14, 2021 for a noticed deposition, and then failed to respond to requests to schedule a new date.  Thereafter, the court twice ordered Li to appear for his deposition and each time Li failed to appear without explanation.  Failing to obey a court order is a "[m]isuse[] of the discovery process," i.e., an express statutory ground for terminating sanctions. (§§ 2023.010, subd. (g), 2023.030, subd. (d), 2025.450, subd. (h).) Furthermore, the court explicitly warned Li of the consequences of failing to obey its orders: after the first time Li failed to appear despite being ordered to do so, the court denied the LLC's initial motion for terminating sanctions but indicated in its order, "should . . . Li continue to flaunt this [c]ourt's discovery orders, a future motion by [the LLC] for terminating sanctions might be granted."

Li makes four arguments in support of his claim that the trial court abused its discretion when imposing terminating sanctions, none of which we find persuasive.  We discuss each of these arguments below.

14

### a. The trial court's statements do not evince an improper focus on punishment

Li contends that the trial court improperly sought to punish him for his discovery misconduct based on the court's statement at the terminating sanctions hearing that, "I think [Li has] taken a conscious position to ignore the court." We are not persuaded. Read in context, the court's statement does not evince punitive intent but instead reflected its rejection of Li's primary argument against terminating sanctions, which was that Li did not fully understand what was happening and thus had not willfully failed to obey the court's orders.

Substantial evidence supports the court's determination that Li acted willfully. The LLC adduced evidence that it had served Li with the court's orders and deposition notices, utilizing the address Li's former counsel had used to serve Li. Evidence showed that Li was monitoring the litigation, as he opposed an ex parte application to advance the hearing on the LLC's second motion to compel and appeared at the hearing. Li did not deny that he had received the deposition notices and notices of ruling served by the LLC or aver under oath that he was unable to understand them. In addition, the trial court could reasonably find the claim that Li had trouble understanding documents written in English (made only by counsel in the opposition brief without evidentiary support) was not credible given that Li had written professional articles in English.

Li also points out that the trial court referred to the *Liang v. Li* case—which resulted in the jury finding that Li had committed fraud and the court finding that Li was not credible—and argues the court "essentially decid[ed] the motion [for terminating sanctions] based on conduct not in the underlying

15

action." This argument is meritless. The court expressly stated that it was *not* relying on the findings against Li in the *Liang v. Li* case, stating, "obviously the rulings in the prior cases don't cover this case." While the court did refer to the *Liang v. Li* case at the end of the hearing, it was *after* it had announced its decision to impose terminating sanctions and Li had then personally addressed the court. The context further makes clear that the court referred to Li's testimony in the *Liang v. Li* action as an additional and supplemental ground on which it found Li's assertions about why he failed to appear for deposition in the LLC action not credible, such that if we were to disregard that ground the court's credibility determination would not change. Nothing in the record suggests that the court's decision was based on the findings against Li from the prior litigation.

> b.    Li's pro per status

Li contends that terminating sanctions were inappropriate because he was not represented by counsel. However, an unrepresented party "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]" (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 ["A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation"].) Even so, the trial court denied the LLC's first motion for terminating sanctions in part because Li was unrepresented, choosing instead to provide Li with an explicit warning that if he continued to ignore the court's orders then terminating sanctions might be granted. Furthermore, Li's lack

16

of counsel did not prevent him from participating in the litigation or appearing for deposition. Not only did Li fail to appear for his court-ordered depositions, he also did not communicate with opposing counsel and did not appear at the discovery motion hearings. Although Li's appellate brief claims he was "avidly attempting to retain counsel," the record is bereft of any evidence to that effect. (*Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 283, fn. 9 ["we do not consider" statements without record support].)

### c. Li's last-minute efforts to comply

Li argues that terminating sanctions were inappropriate because, prior to the hearing, he had paid the monetary sanctions and offered to appear for his deposition. However, the trial court could reasonably conclude that these actions, taken at the 11th hour and only after the LLC had filed yet another motion after Li yet again failed to appear for deposition, did not ameliorate the harm caused to the LLC by Li's refusal to cooperate. Given his past track record, whether Li would in fact appear for deposition was highly questionable. In any event, the LLC had been attempting to take Li's deposition for more than six months and, by the time of the hearing, had less than seven weeks to prepare for trial. (See *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1619, 1620 [affirming terminating sanctions where the defendants' refusal to provide discovery was "persistent," there was "an approaching trial date scheduled for less than two months after the sanction hearing," and " 'imposition of a lesser sanction would have permitted [the defendants] to benefit from their stalling tactics' "].) Not only did the LLC need time to depose Li and incorporate his testimony

17

into its trial presentation, but also Li's deposition testimony might have disclosed the need for additional discovery.

Li relies on *Crummer v. Beeler* (1960) 185 Cal.App.2d 851, to argue that it is an abuse of discretion to impose terminating sanctions after a party has complied with the court's orders. *Crummer* is inapposite because it addressed vastly different circumstances than those present here. In *Crummer*, the trial court granted terminating sanctions for a single instance where the defendant failed to appear for a deposition on a date unilaterally selected by the plaintiff's counsel, and had offered to make himself available for deposition on a date about five weeks later. (*Id*. at pp. 852-853.) Unlike this case, the defendant in *Crummer* had not disobeyed a court order, let alone two court orders. Notably, the *Crummer* court expressly distinguished the situation before it from cases where "opposing counsel had afforded the defaulting party additional opportunity to comply [citations] or said party's failure to appear involved disregard of a specific court order" (*id*. at p. 859), which are exactly the circumstances present here.[8]

   d.    Less drastic sanctions

Li lastly asserts that the trial court erred in imposing terminating sanctions because issue or evidence sanctions were

_____

[8] Li also relies on *Newland v. Superior Court* (1995) 40 Cal.App.4th 608, where the court held "that it is an abuse of discretion for a trial court to issue a terminating sanction for failure to pay [a monetary] sanction." (*Id*. at p. 610.) That principle has no application here, as the trial court imposed terminating sanctions based on Li's failure to comply with two court orders requiring him to attend his deposition and not his failure to pay monetary sanctions.

18

available.  However, " '[T]he question before this court is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.  [Citation.]' [Citation.]" (*Collisson & Kaplan v. Hartunian, supra*, 21 Cal.App.4th at p. 1620.)  Li does not identify any specific issue or evidence sanctions the court could have imposed in lieu of terminating sanctions.  The trial court could reasonably find that such lesser sanctions would not adequately ameliorate the harm caused by Li's failure to appear for his deposition, which resulted in the LLC being deprived of discovery on a potentially wide range of topics to present its own case.[9]  The trial court could also reasonably conclude that any issue or discovery sanctions reflecting the scope of Li's refusal to provide discovery would essentially result in a judgment against him, and thus be

---

[9] Evidentiary or issue sanctions are usually more appropriate than terminating sanctions where it is "unlikely [that] the responsive information [sought by the discovery] would relate to at least some of the core issues at trial" such that lesser sanctions can be crafted "to replace the information that would or could be included" in the discovery not produced.  (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 605-606; see also *Caryl Richards, Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 305 [terminating sanctions improper for the defendant's failure to adequately respond to a single interrogatory, which could have been effectively ameliorated by an issue or evidence sanction regarding the topic of the interrogatory].)  Here, in contrast, Li's deposition testimony would have covered topics highly relevant to core liability issues, and Li makes no showing that his refusal to appear for deposition could have been effectively addressed with issue or evidentiary sanctions.

19

functionally equivalent to a terminating sanction.  (See *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 929 [rejecting the plaintiff's argument that the trial court should have imposed an issue sanction instead of terminating sanctions in part because the only possibly appropriate issue sanction would be "equivalent to a dismissal of [the] plaintiff's claim"].)

## B.   The Default Judgment Does Not Award a Double Recovery

Li separately challenges the default judgment on the ground it results in an impermissible "double recovery."  (See *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158 [a plaintiff "is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence"].)  More specifically, Li contends that the default judgment's award to the LLC resulted in a double recovery to Liang, who as the sole remaining member of the LLC stood indirectly to gain from the LLC's recovery in addition to and on top of Liang's recovery in the *Liang v. Li* judgment.

The LLC contends there is no double recovery because the two judgments remedied different harms: the judgment Liang obtained in *Liang v. Li* remedied harms caused to Liang personally from Liang's loss of use of his investment and Li's failure to make his capital contribution, while the default judgment the LLC obtained compensated it for distinct harm caused by the unauthorized loan such as interest and late fees.[10]

---

[10] The LLC also contends that the rule against double recovery applies to multiple awards to a single plaintiff, and thus does not apply here because the judgments are in favor of two distinct plaintiffs—the LLC and Liang individually.  We need not

1.    *Standard of Review*

A default judgment entered pursuant to section 585, subdivision (b) is subject to reversal where it includes damages that are contrary to law.  (See *Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1053-1054.)  Li's challenge to the default judgment presents a question of law for our independent review because it involves facts not in dispute and " 'the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values.' " (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437-438, quoting *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

2.    *There Was No Double Recovery*

The two judgments at issue here do not provide duplicative relief for any "distinct item of compensable damage." (*Tavaglione v. Billings*, *supra*, 4 Cal.4th 1150 at p. 1158.)  Li makes no argument that the default judgment duplicates the $200,000 in punitive damages awarded to Liang.  Instead, he focuses on the constructive trust and $2 million elements of the *Liang v. Li* judgment, and contends they duplicate the $4 million awarded to the LLC in this case.

We disagree.  In *Liang v. Li*, the trial court awarded a constructive trust transferring Li's interest in the LLC to Liang.  This remedy was imposed to avoid Li being unjustly enriched by continuing to hold an interest in the LLC despite not making the required capital contribution in return for that ownership interest.  The constructive trust was in Liang's favor because he

_____

decide this issue, as each element of relief in the two judgments compensated separate items of damage regardless of the plaintiff's identity.

21

contributed essentially the entirety of the LLC's capitalization. The $2 million compensated Liang for the loss of use of funds he committed to the LLC, funds which Li used to make non-refundable deposits and origination payments to the hard money lender to complete the purchase of the Property.

The $4 million awarded to the LLC was for entirely distinct damages suffered by the LLC as opposed to Liang. Evidence adduced at the default prove-up hearing showed that Li improperly burdened the LLC with a hard money loan. The LLC was unable to pay off that loan, and the loan's terms imposed interest and late fee costs on the LLC well in excess of the $4 million the LLC requested in damages. Indeed, by the time the default judgment was entered, the LLC owed more than $8 million in interest and fees on top of the loan's principal balance—well in excess of the $4 million LLC judgment amount at issue. This economic damage to the LLC is distinct from the damages for which Liang was compensated, and thus does not constitute a double recovery.

## DISPOSITION

We affirm the judgment. Hollywood Garden is awarded its costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.

We concur:


CHANEY, J.                    BENDIX, Acting P. J.


22