Filed 8/27/24  Security Management Group Internat. v. Jenkins CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SECURITY MANAGEMENT GROUP INTERNATIONAL, INC., <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> SCOTT JENKINS, <br><br>    Defendant and Appellant. | A164147, A164970 <br><br> (Alameda County <br> Super. Ct. No. RG16809374) |

A jury awarded approximately one million dollars in damages, including $100,000 in punitive damages, to private security company, respondent Security Management Group International, Inc. (SMGI or the company), for multiple business torts committed by its former chief executive officer, appellant Scott Jenkins.

Jenkins now appeals the resulting judgment and the denial of his motion for a new trial, raising numerous issues.

We affirm.

**BACKGROUND**

SMGI brought suit against Jenkins, asserting causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, intentional interference with contractual relations, violation of the Unfair Competition Law (Bus. and Prof.

1

Code, § 17200), and declaratory relief. It alleged that during Jenkins' three-year tenure as C.E.O., Jenkins misappropriated more than $400,000 from the company through a combination of writing unauthorized checks and making unauthorized withdrawals and wire transfers (including $21,500 in unauthorized wire transfers for personal expenses relating to his divorce); ran up $60,000 in unauthorized credit card charges; and unilaterally gave himself $35,000 in unauthorized pay raises.

SMGI also alleged that Jenkins, while still employed, had been engaged in a secret plot with a competitor, Resolute Security Group, Inc. (RSG), to destroy the company by stealing its customers and hiring away its employees. SMGI alleged that, as part of the plot, Jenkins tried to acquire a controlling stake in SMGI but failed to disclose to members of SMGI's board of directors during negotiations for the purchase of controlling shares that the attempted acquisition was just a ruse to destroy the company, carried out with the secret financial backing of a business rival, Scott Gimple, RSG's founder who had been ousted from the SMGI board but remained an SMGI shareholder.

It further alleged that when Jenkins abruptly resigned, he took his entire management team with him, abandoned the company's headquarters leaving no employees behind, and with the former SMGI management team immediately began working for the competitor. The company's computers and cloud storage were allegedly discovered to have been wiped clean, the telephones had been "sabotaged," and the company's customer files were missing. After that, many customers transferred their business to the competitor and/or cancelled their contracts with SMGI.

The case proceeded to a 10-day trial. The first day of trial was not reported, and thus we have no record of opening statements and a portion of

testimony by SMGI's first witness, Robert Shiells, who testified for approximately two hours.  At the conclusion of trial, the jury found Jenkins liable for breaching his duty of loyalty to SMGI, for which it assessed $350,000 in damages; conversion, for which it awarded $251,268.75; interference with contract, for which it awarded $150,000; and interference with prospective economic relations, for which it likewise awarded $150,000.[1] The trial court then held a one-day bifurcated trial on punitive damages at which Jenkins testified.  The punitive damages phase of trial was unreported and no other record of the evidence was made.  The jury awarded $100,000 in punitive damages.

## DISCUSSION

In considering Jenkins' many arguments, we will consider only those issues that are identified in an argument heading of his opening brief, because the headings define the issues on appeal.  Their purpose is to ensure that we are " ' "advised, as [we] read, of the exact question under consideration, instead of being compelled to extricate it from the mass." ' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand Corp.*).)  " 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' " (*Tsakopoulos Investments, LLC v. County of Sacramento* (2023) 95 Cal.App.5th 280, 310.)

In considering this appeal, we also presume that all the trial court's rulings are correct.  It is Jenkins' burden as the appellant to persuade us both of an error and that he was prejudiced as a result.  (See *Grappo v.*

---

[1] The jury also found Jenkins breached a Mutual Non-Disclosure and Confidentiality Agreement, but the breach caused no damages.

*McMills* (2017) 11 Cal.App.5th 996, 1006 [calling such framework "[t]he most fundamental principle of appellate review"].)

This burden requires an appellant to do more than just criticize a ruling in a conclusory, truncated fashion: an appellant must *develop* a legal argument in a sufficiently clear manner to enable us to evaluate its soundness, without undertaking laborious steps on our own to figure out the applicable law, the pertinent facts or the logic behind appellant's assertion of legal error. " '[A]n appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp., supra,* 36 Cal.App.5th at p. 146.) "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) So, for example, it is not sufficient simply to cite legal authority without explaining how it applies. (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) Nor is it proper to make factual statements without citing to the record; any arguments not supported by necessary record citations are forfeited. (*United Grand Corp.*, at p. 156.) Simply put, appellate courts are not required to "guess" how an appellant thinks the trial court erred. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 869.) An appellant must "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error," and when an appellant fails to do so we may reject the appellant's argument on its face as insufficient to demonstrate error. (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910; accord, *Lafayette Morehouse,* at p. 869.)

Jenkins' opening brief asserts dozens of errors, many are briefed in a disorganized fashion without appropriately informative argument headings, and many in a conclusory fashion with little or no legal authority or analysis. He also fails to provide record citations for many of the factual assertions supporting his claims of error. Issues not discussed in this opinion are deemed forfeited for violating one or more of these principles of appellate review.

### 1.     The Jury Instructions

Jenkins argues, first, that there were numerous errors in the jury instructions.

It is unnecessary to address the substance of the jury instructions because Jenkins has not demonstrated that any of the claimed errors prejudiced him. "[T]here is no rule of automatic reversal or 'inherent' prejudice applicable to any category of civil instructional error, whether of commission or omission." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.)  Rather, "[i]nstructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Ibid.*) "[T]hat determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury," and "[a]ctual prejudice *must be assessed in the context of the individual trial record.*" (*Ibid.*, italics added.)  This requires consideration of factors including "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580-581.)

Our duty to examine the record to evaluate whether an instructional error is prejudicial under the *Soule* factors "is triggered 'when and only when the appellant has fulfilled his duty to tender a proper prejudice argument.

Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice.' [Citation.] These principles are derived from the axiom that prejudice is not presumed and the burden is on the appealing party to demonstrate that prejudice has occurred." (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 614.) " 'Where any error is relied on for a reversal it is not sufficient for appellant to point to the error and rest there.' " (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106; accord, *DiRaffael v. California Army National Guard* (2019) 35 Cal.App.5th 692, 718.)

Here, Jenkins fails to analyze the *Soule* factors at all and instead makes only conclusory assertions of prejudice for the many errors he asserts. He goes so far as to call many of the claimed instructional errors "facially prejudicial" and asserts as to another that "prejudice is self-evident." This was a 10-day trial, with a (partial) reporter's transcript running to nearly 3,000 pages and a 1,000-plus-page appendix. Prejudice is not "self-evident." Jenkins has failed to carry his burden of affirmatively demonstrating the existence of any prejudicial instructional error. (*Adams v. MHC Colony Park, L.P., supra,* 224 Cal.App.4th at p. 615.)

In addition, an appellant "carries the burden of presenting a sufficient record to establish that . . . claimed instructional errors were not invited or waived . . . ." (*Green v. Healthcare Services, Inc.* (2021) 68 Cal.App.5th 407, 420), and yet here the record shows that Jenkins also forfeited several of them: (1) his contention that the court erred by failing to give a clarifying instruction that he had a legal right to announce his resignation to SMGI customers, and (2) his contention the court erred by failing to give an instruction on breach of fiduciary duty damages. That is because the record

6

does not show that he requested any such instructions.[2] (See *Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9 ["When a trial court gives a jury instruction which is correct as far as it goes but which is too general or is incomplete . . . , a failure to request an additional or a qualifying instruction will waive a party's right to later complain on appeal about the instruction which was given"].)

Even if we considered the merits of Jenkins' claims of instructional error, we still would reject them all because Jenkins has failed to develop a coherent argument that any of the instructions were legally erroneous. He asserts *at least 20 distinct claims of instructional error* (and maybe more, it's hard to tell) in just 10 pages, unfurled rapid-fire at a breakneck pace. The discussion of each claimed error is long on generality, short on citation to legal authority and practically devoid of legal analysis. In the few instances

---

[2] Jenkins has filed an opposed request for judicial notice that we previously took under submission, a portion of which requests judicial notice of several proposed jury instructions. He requests judicial notice of the set of jury instructions proposed by SMGI, which are already in the record; two proposed instructions submitted by his co-defendants, John Gimple and Scott Gimple and his own Proposed Special Instruction No. 1 ("Absolute Right of At-Will Employee to Terminate Employee [*sic*]").

We deny his request for judicial notice of the proposed instructions, but on our own motion we deem the record augmented to include those that are not already in the appendix, specifically: Defendants' Special Instruction No.1 ("Employee's Announcement He Is Leaving His Employment") and Defendants' Special Instruction No. 2 ("Hiring Another Company's Employees"), both proposed by defendants Scott Gimple and John Gimple, and Defendant Scott Jenkins' Proposed Special Instruction No. 1 ("Absolute Right of Employee to Terminate Employee [*sic*]"). (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

We address the remainder of Jenkins' opposed request for judicial notice in footnote 10, *infra,* p. 16.

7

where a claim of instructional error is supported by citation to case law, Jenkins fails to explain how the authority applies. And with few exceptions, he does not even lay out the language of the instructions he challenges. His challenge to the jury instructions sweeps far and wide but in highly conclusory fashion. No claim of instructional error is sufficiently explained or developed to constitute a proper appellate argument, and thus none meets his burden to demonstrate error.

Indeed, many problems are apparent from the face of Jenkins' appellate briefing or a cursory review of his cited authorities and/or portions of the record. Illustrative are his arguments about errors in the instructions concerning the conversion claim, where we will end our discussion.

Jenkins argues that the conversion instructions were legally incorrect, first, because they omitted the element of demand for the return of property allegedly converted. He cites authority that where property is acquired by consent, a claim for conversion requires proof of demand for the return of property and a refusal by the defendant. (*Atwood v. Southern California Ice Co.* (1923) 63 Cal.App. 343, 345.) But the plaintiff's theory was that none of Jenkins' actions were consensual, and both the jury instructions and special verdict form reflected that theory. On the conversion claim, the jury was instructed that SMGI had to prove (among other elements) that Jenkins withdrew funds from bank accounts "which [he] was not supposed to access without SMGI's authorization and knowledge" yet did so, and that "SMGI did not consent." And the special verdict form asked merely whether Jenkins "intentionally t[ook], spen[t], use[d], or interfere[d] with money, that belonged to SMGI," whether SMGI "consent[e]d" to such actions, and what dollar amount of money Jenkins "took" from SMGI. The instructions and verdict form thus left no room for a finding Jenkins converted money that he

8

acquired with SMGI's consent. So the demand requirement of *Atwood* is irrelevant. (See *Flennaugh v. Heinrich* (1948) 89 Cal.App.2d 214, 222 ["when property comes into the possession of a . . . person tortiously or unlawfully, . . . a demand, as a necessary prerequisite to the maintenance of a suit for conversion, is not necessary"].)

Jenkins also asserts the conversion instructions were faulty because "the jury was not instructed that it must find specific identifiable sums [of money] were taken and not returned." But he cites no legal authority suggesting that specific identifiable sums of money are *not* involved where, as here, money is taken by means of provable, unauthorized bank withdrawals. The case he cites rejecting a conversion claim involved the theft of an indeterminate number of duffel bags stuffed with an indeterminate amount of cash. (See *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 397.) By contrast, SMGI cites authority that expressly discusses caselaw involving conversion of money by the same means involved here: cashing checks belonging to the plaintiff by endorsing them with an unauthorized signature. (See *Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 212, discussing *Acme Paper Co. v. Goffstein* (1954) 125 Cal.App.2d 175, 179.) In short, Jenkins has cited no pertinent caselaw in support of this claim of error. He does not even discuss the one case he *does* cite.

Jenkins also challenges the instructions on awarding treble damages for conversion but the argument is confusing, poorly developed and hard to follow.[3] It also borders on frivolous because the jury did not award treble

---

[3] He asserts that it failed to correctly instruct the jury on the heightened showing of " 'criminal intent' to engage in theft" under Penal Code section 496, while at the same time erroneously telling the jury that treble

damages for conversion, and so any error obviously was harmless. Although the jury was *instructed* that it could treble damages for conversion, the portion of the special verdict form addressing the conversion cause of action had no question asking the jury to do so. The verdict form merely asked it to determine "the dollar amount of money that Scott Jenkins took from SMGI" (answer: $251,268.75). Jenkins' response to this problem is unpersuasive.

We will comment no further. For the reasons stated, Jenkins has failed to demonstrate any prejudicial instructional error.

### 2.     Compensatory Damages

Next, Jenkins argues that the compensatory damages were "incorrectly calculated" because, he claims, the jury awarded damages "for the same alleged wrongs."

This argument fails at the threshold because Jenkins did not request a special verdict form segregating the various elements of damages.[4] (See *Moore v. Teed* (2020) 48 Cal.App.5th 280, 294-295 [duplicative damages claim held forfeited].) Without a special verdict segregating the various components of damages, " ' "we have no way of determining what portion—if any" of an award was attributable to a particular category of damages challenged on appeal.' " (*Id*. at p. 295.)

---

damages could be awarded "even if no form of 'fraud' was found." But he does not explain what "criminal intent" entails much less what a proper instruction should have said.

[4] Although SMGI does not argue forfeiture but simply addresses the argument on the merits, that does not preclude our consideration of the problem. (See *S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 722 [deeming issue forfeited even though respondent did not argue forfeiture].)

10

Furthermore, Jenkins' claim of error is not sufficiently developed for us to consider it.

Both parties cite and acknowledge the applicable legal standard. As explained by our Supreme Court in caselaw both parties cite, "Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158-1159.)

Jenkins recites this general legal principle but does not explain how it applies here. He argues that multiple claims were based on the same underlying *conduct*. And that may be true. But he has not explained the various "items of damages" sought for each claim, much less demonstrated that the jury awarded the same "items of damage" on more than one claim. Such a showing would require at least some minimal comparison between plaintiff's damages theories for each cause of action, the evidence supporting them and the amounts the jury awarded for each cause of action. Jenkins has not done that, and it is not our job to pour over the trial transcripts to figure out plaintiff's damages claims, scrutinize the special verdict form, and attempt to reconcile the two with no assistance. (See *Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 969 ["It is not our function to scour the record and make [appellant's] arguments for him"].) "Appellants may not enlist the court as their legal assistant to develop arguments they merely suggest. The duty to present legal analysis belongs to the parties. It would be unfair for one side to loft an undeveloped legal idea, to rely on the court to work it out, and to leave the opposing party with nothing concrete to tackle in the

11

briefing." (*Paglia & Associates Construction, Inc. v. Hamilton* (2023) 98 Cal.App.5th 318, 327; accord, *KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1031 [appellate courts disregard "conclusory arguments"].)

Furthermore, as SMGI points out, the jury was instructed that it was *not* permitted to award duplicative damages under multiple legal theories— an instruction we must presume the jury followed (see *People v. Boyette* (2002) 29 Cal.4th 381, 436)[5]—and it also awarded significantly lower compensatory damages than plaintiff sought.[6] Jenkins does not respond to those points. In addition, plaintiff's counsel told jury in closing argument that even though some of its damages claims overlapped, "[t]his does not mean that we want—are entitled to or are asking [for] this money [to be] awarded" more than once.[7]

---

[5] No such instruction was given in any of the cases Jenkins cites (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1612; *DuBarry Internat., Inc. v. Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 564-565 & fn. 16) and, indeed, in one the jury was expressly told (in response to a jury question) that it *could* award duplicative damages. (See *DuBarry*, at pp. 564-565 & fn. 16.)

[6] Plaintiff's counsel asked the jury to award approximately $2.1 million in compensatory damages: $512,916 for stolen money (which included $416,000 in unauthorized wire transfers and $96,000 of personal expenses) and $1.6 million in damages for the company's diminution in value. The jury awarded less than half that amount, i.e., $901,268: $350,000 in breach of fiduciary duty damages, $251,268 in conversion damages, $150,000 for interference with contract, and $150,000 for interference with prospective economic relations.

[7] Jenkins misrepresents the record by omission on this point. He misleadingly asserts that plaintiff's counsel "admitted its own duplicative theory at trial" by telling the jury that the breach of fiduciary duty and conversion claims were "two 'avenue[s] to get to the same damages claims.' "

12

In sum, we are left with far more questions than answers regarding Jenkins' assertion the jury awarded duplicative damages. Accordingly, he has failed to meet his burden as the appellant to demonstrate that it did.

### 3. Punitive Damages

Jenkins argues the $100,000 punitive damages award must be vacated, first, because SMGI delayed until the middle of closing arguments on the merits to seek discovery of his financial condition and bifurcation of the punitive damages phase. He argues this was legally erroneous on the face of Civil Code section 3295, the statute precluding pre-trial discovery of a defendant's financial condition, allowing bifurcation and precluding introduction of evidence of a defendant's wealth during the liability phase of trial. The contention is not supported by the statute's plain language, which for brevity we refrain from discussing. (See Civ. Code, § 3295, subds. (c), (d).)

The contention has also been consistently rejected by the courts. "[A] court may order a defendant to produce evidence of his or her financial condition following a determination of liability for punitive damages even if the plaintiff has not attempted to obtain that information prior to trial." (*StreetScenes v. ITC Entertainment Group, Inc.* (2002) 103 Cal.App.4th 233, 243; accord, *Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 193 ["the court may issue its order at any time, including after a finding of liability has been made"]; *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 609.) SMGI cites some of these cases, yet Jenkins persists in his reply brief to ignore them.[8]

He fails to disclose that plaintiff's counsel told the jury that nonetheless, it could not *award* duplicative damages.

[8] The fact that a trial court has discretion to permit discovery into a defendant's financial condition after a trial on liability has been conducted

13

Next, Jenkins argues the jury instructions on punitive damages were legally erroneous because they permitted a finding of oppression, fraud or malice in a vacuum rather than with respect to a specific cause of action (see Civ. Code, § 3294). We reject this claim for two reasons. First, he has not demonstrated any error: the authority he cites does not address this issue (see *Medo v. Superior Court* (1988) 205 Cal.App.3d 64 [separate juries for liability and punitive damages not permitted]), and the court gave the standard pattern instruction on this issue (see CACI No. 3941).[9] In addition, as noted above, Jenkins has made no attempt to demonstrate that any such error was prejudicial.

Next, Jenkins argues the award must be vacated because "[t]his record has **no** evidence to justify the award." There is "no evidence" because there is no reporter's transcript of the punitive damages phase.

The lack of a record compels us to affirm the jury's punitive damages award. An appellant cannot challenge the sufficiency of the evidence if it fails to provide a reporter's transcript of trial. (See, e.g., *Foust v. San Jose*

---

"does not preclude a trial court from determining, in its discretion, that such an order is inappropriate" on the ground the plaintiff delayed too long in seeking such information. (*I-CA Enterprises, Inc. v. Palram Americas, Inc.* (2015) 235 Cal.App.4th 257, 284.) But Jenkins does not contend that the particular facts here rendered the ruling an abuse of discretion. He asserts only categorically that the court has no power to permit this after a trial on liability has been conducted, ever.

[9] In relevant part, the jury was instructed: "If you decide that Scott P. Jenkins and John Gimple's conduct caused SMGI harm, you must decide whether that conduct justifies an award of punitive damages. [¶] At this time you must decide whether SMGI has proved by clear and convincing evidence that Scott P. Jenkins and John Gimple engaged in that conduct with malice, oppression or fraud. The amount of punitive damages, if any, will be decided later."

*Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 184-188; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.) That is because "a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) And " '[i]t is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark Corp*).) Where the record is silent on a particular matter, we *presume* the judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Jenkins implies that punitive damages awards are exempt from these bedrock principles of appellate review, but he cites no authority that they are, and we are aware of none. On the contrary, his position is directly refuted by caselaw. (See *California Novelties, Inc. v. Sokoloff* (1992) 6 Cal.App.4th 936, 945 [rejecting sufficiency of evidence challenge to punitive damages award because appellant "has provided us with no record of the testimony presented by plaintiffs at the four-day hearing on damages"].) Indeed, his own cited authority acknowledges that when a punitive damages award is challenged on the ground of insufficient evidence, appellate courts draw all favorable presumptions in support of *upholding* the award. (See *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 916.)

Jenkins also argues the $100,000 award cannot stand because it equals his entire net worth, which he says is $100,000. And he cites caselaw holding that a punitive damages award is excessive as a matter of law in such circumstances. (See *Storage Services v. C.R. Oosterbaan* (1989) 214 Cal.App.3d 498, 514-516; but see *People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 536-537 [questioning *Storage Services*]; *Zaxis Wireless Communications, Inc. v. Motor Sound Corp.* (2001) 89 Cal.App.4th

15

577, 582 [same].)  We express no opinion on the merits because this contention fails for the same reason:  the lack of an adequate record.[10]

### 4.    SMGI's Damages Expert

Jenkins contends the court erred in permitting testimony from SMGI's damages expert, Mark Newton.  Jenkins concedes, however, that he did not object to the admission of Newton's testimony.  Accordingly, he has forfeited any challenge to its admission.  (See *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 396-397 [arguments that damages expert was incompetent and used flawed methodology held forfeited].)  " 'It is hornbook law that a timely and specific objection is required to prevent the consideration of certain evidence; the failure to object at all waives any claim of error.' " (*Id*. at p. 397.)

### 5.    Guilty Plea Evidence

Jenkins challenges on several grounds the admission of Exhibit 151, a copy of his February 2018 guilty plea to one misdemeanor count of embezzlement (Pen. Code, § 487, subd. (a)) reflecting he was sentenced to three years of probation and required to attend a driving under the influence program.

_____

[10] The remainder of Jenkins' opposed motion for judicial notice that we previously took under submission (see footnote 2, *ante,* p. 7) asks us to take judicial notice of the transcript of his deposition in which he testified about his net worth.

We deny that request.  "[D]ocuments not before the trial court cannot be included as part of the record on appeal and thus must be disregarded as beyond the scope of appellate review." (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.)  Moreover, deposition testimony is not judicially noticeable.  (See *Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22 ["Although the existence of statements contained in a deposition transcript filed as part of the court record can be judicially noticed, their truth is not subject to judicial notice"].)

SMGI argues without contradiction by Jenkins that: (1) he forfeited any challenge to the admissibility of this exhibit because, although the record reflects he objected to its introduction, the record does not specify any ground(s) for his objection (see Evid. Code, § 353, subd. (a) [record must show a timely objection to evidence "and so stated as to make clear the specific ground of the objection"]); (2) any error in the introduction of the exhibit was harmless, because there also was oral testimony about Jenkins' criminal plea; and (3) Jenkins' contention the document was not certified is wrong.

Jenkins' reply brief does not address those points (indeed, it does not address this issue at all). We interpret Jenkins' failure to respond to SMGI's arguments as an implicit concession of their merits. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89-90 [appellants implicitly conceded point by "failing to respond in their reply brief to the [respondent's] argument on this point"].)

We also reject Jenkins' arguments for the additional reason that he has not made any attempt to show that the admission of this evidence was prejudicial. When challenging an evidentiary ruling, an appellant must do more than show the trial court erred. "A court's error in excluding evidence is grounds for reversal only if the appellant demonstrates a miscarriage of justice, that is, that a different result would have been probable had the error not occurred." (*Major v. R.J. Reynolds Tobacco Co.* (2017) 14 Cal.App.5th 1179, 1202; see also *Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1480; Cal. Const., art. VI, § 13; Evid. Code, § 354; Code Civ. Proc., § 475.) Jenkins has made no attempt to do that.

17

### 6. Conversion Verdict

Jenkins argues that the conversion verdict "fails both as a matter of law, and also even under the substantial evidence standard of review as to the facts" for several reasons.

First, reprising his argument concerning the jury instructions, he argues that conversion requires proof of a "specific, identifiable" sum and yet in this case, there is no substantial evidence to support the jury's $251,000 conversion verdict which he says "is not in the record, and is made up." But, as we have explained, Jenkins has failed to show that the court erred by not *instructing* the jury that conversion requires proof of "specific identifiable sums of money."

And because Jenkins has failed to demonstrate any error in the jury instructions in this respect, he cannot challenge the verdict through the backdoor by recasting the same point as a sufficiency of the evidence problem. It is well-settled that an appellate court "review[s] the sufficiency of the evidence to support a verdict under the law stated in the instructions given, rather than under some other law on which the jury was not instructed." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 674-675 (*Bullock*).) "Absent instructional error, . . . for an appellate court to review a verdict under a rule of law on which the jury was not instructed would allow reversal of a judgment on a jury verdict, requiring a retrial, even though neither the jury nor the court committed error." (*Id.* at p. 675.)

The argument also fails on its face: Jenkins' complaint is that "no one can even figure out where the number comes from" yet concedes that "the jury was told to calculate specific sums plus further compensation." He has not shown that there is no possible way the jury could have sifted through the

18

evidence and arrived at a figure of $251,268.75. He has not even summarized (much less analyzed) SMGI's damages evidence.

Second, he contends that the conversion verdict is "invalid" or "void" because in order to treble damages for conversion, "the evidentiary rules of punitive damages attach" and yet there was no evidence introduced during phase one of his financial condition, nor was there clear and convincing evidence of oppression, fraud or malice. We do not address these points. As explained above, the jury did not award treble damages for conversion. Any error was harmless.

Next, he argues there was insufficient evidence of conversion because "one signature is not conversion," a contention supported by argument that $1.1 million of business checks and wires allegedly converted "were paid to third parties and not taken by [him]." He asserts the money was used to pay legitimate business expenses, including bills and employee payroll. At a very high level of generality, the argument has some superficial appeal. But Jenkins has failed to develop the argument in a way that we can meaningfully assess it. He has not discussed *any* of the evidence bearing on this issue; rather, the entire argument is supported by a citation to a single, isolated sentence in SMGI's closing argument.[11] Nor has he shown either that the jury instructions were erroneous in connection with this issue or, alternatively, that the evidence was insufficient *judged by the law stated in the instructions*. (See *Bullock, supra,* 159 Cal.App.4th at pp. 674-675.) So the point is wholly disconnected from any specific claim of error. Further, his

---

[11] He cites counsel's statement to the jury that "Jenkins wrote checks over $5,000 on a single signature for more than a total of $977,000. He also made wire transfers in excess of $5,000, each on his single signature, for over $137,000."

19

argument is not supported by a discussion of any pertinent legal authority. He cites just one case but does not analyze it, and it is of no apparent relevance. (See *Voris v. Lampert* (2019) 7 Cal.5th 1141 [holding that conversion does not lie to recover unpaid wages].)

We also have trouble following the logic. Even if we assume that some portion of the funds allegedly converted were put to some legitimate use that legally cannot constitute conversion, Jenkins has failed to demonstrate that the jury necessarily found him liable for converting *those* funds or otherwise explain why the entire verdict fails for insufficient evidence. As noted, the jury returned a conversion verdict of $251,268.75, a figure substantially lower than the $1.1 million in allegedly unauthorized wires and checks.

For all these reasons, Jenkins has not met his burden to demonstrate an error.

Next, Jenkins argues that the jury's conversion verdict was unsupported by the evidence because, as we understand his argument, the $46,022 he concededly paid himself in unused paid time off was not improper. He maintains that this aspect of the conversion claim was based only on an employment policy stated in an employee handbook yet "there was no evidence" the handbook even applied to him. But the very testimony he cites is from a board member who testified that he believed "it was the policy for everyone."

And even without such testimony we would reject Jenkins' argument. He makes no argument, much less cites authority, that it was beyond the fact-finding province of a jury to reasonably infer that the policy stated in the employee handbook *did* apply to him. (See *Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308 [in reviewing judgment based on jury verdict, "a reviewing court must resolve all conflicts in the evidence in favor of the

20

prevailing party and must draw all reasonable inferences in support of the trial court's judgment"].)

### 7. Breach of Fiduciary Duty Verdict

Next, Jenkins challenges the jury's $350,000 breach of fiduciary duty verdict on multiple grounds.

First, he argues that he is protected by the business judgment rule for the way he ran the company and contends that "the root problem with the jury's verdict is that the jury granted SMGI fiduciary duty damages for [his] alleged poor management (that the Board even approved no less)." But the legal standard he recites was not reflected in the jury instructions, and Jenkins has not argued that the court erred by failing to instruct the jury on the business judgment rule.[12] As noted, absent error in the jury instructions, we judge the sufficiency of the evidence based on the law stated in the instructions. (See *Bullock*, *supra*, 159 Cal.App.4th at pp. 674-675.) Jenkins' arguments about points of law not addressed in the instructions given are thus irrelevant in determining the sufficiency of the evidence.

Next, he argues that his expenditures for overseas travel were legitimate. This conclusory argument is presented in a vacuum, with no discussion of the jury's actual verdict and no discussion of any law. It fails to demonstrate error.

Next, he argues he did not breach his duty of loyalty "by using one signature" on checks "as a matter of law" because the SMGI board never questioned his check-writing practices and/or ratified his decisions to pay SMGI bills in this fashion. This conclusory argument is presented in a

---

[12] Such an argument would fail, because the record does not show he requested an instruction on the business judgment rule.

21

vacuum, with no discussion of the jury's actual verdict, no discussion of the evidence of the bills supposedly paid and the testimony about them, and no discussion of any law. It fails to demonstrate error.

Next, he argues that "trying to acquire a company is not a breach of duty of loyalty." Citing—but not discussing—*Jaynes v. Jaynes* (1950) 98 Cal.App.2d 447, he asserts that the only information SMGI claims he should have disclosed was that Gimple, SMGI's business rival, was his source of funding in the attempted acquisition of SMGI, but that he did not owe SMGI a duty to disclose that information. *Jaynes* does not address the existence or non-existence of a duty by corporate officers to disclose such information, nor in any way support that contention.[13] Accordingly, Jenkins has shown no error.

Next, he argues he did not breach his duty of loyalty by transferring SMGI business and employees to RSG when he resigned. This contention is forfeited. It is evident from even a cursory reading of the appellant's brief that Jenkins has failed to summarize all the relevant evidence, and to the extent he discusses the evidence at all it is unfairly one-sided.

For example (and without being exhaustive), he asserts that the Board *instructed* him to cut most of the employees, citing his own testimony to that effect and that of an SMGI employee who testified Jenkins told him this, and

---

[13] *Jaynes* reversed a judgment for instructional error where a non-managing shareholder was allegedly duped into selling her shares to the company's general managers based on false representations about the value of her shares and false representations that the managers had a controlling stake in the company. (See *Jaynes v. Jaynes, supra,* 98 Cal.App.2d at p. 449.) The appellate court held that the breach of fiduciary duty instruction erroneously imposed a duty on the selling shareholder to investigate the true facts for herself. (See *id.* at pp. 451-453.)

22

thus claims he could not be held liable for merely "informing the [SMGI] employees of the state of the company." But nowhere does his appellate brief discuss conflicting testimony by an SMGI board member *denying* that Jenkins was told to fire employees or that the board planned to shut down the company.

He does not discuss his own admission at trial that while he was still employed with SMGI he was simultaneously working with Gimple to make a business proposal to one of SMGI's prospective clients (Edison Electric Institute).

He does not discuss testimony that at the very first meeting with new SMGI employees who had been hired by RSG (including Jenkins), RSG discussed that "the plan was to reach out to the SMGI clients, let them know what was going on, and RSG was going to start taking over these accounts."

He does not discuss the evidence that he directed departing management employees to engage in wholesale destruction of all SMGI paper files and to wipe all data from SMGI computers coincident with their mass, unannounced resignation.

He does not discuss the *content* of the email he sent to SMGI clients soliciting their future business when he resigned from SMGI. The email went well beyond merely announcing his departure and was similar in tone and content to communications courts in other cases have held to be unlawful solicitation.[14] (See, e.g., *American Credit Indemnity Co. v. Sacks* (1989)

---

[14] The email touted his own personal accomplishment as CEO for "bringing this company back from the brink of extinction to the flourishing company it is today," announced his resignation and that of his executive team due to "the differences in the long-term vision and commitment for continued growth with the company's Board of Directors" and concluded by

213 Cal.App.3d 622, 626, 636-637 [holding that similar letter went beyond merely announcing new employment and constituted unlawful solicitation of employer's customers]; *Blue Mountain Enterprises, LLC. v. Owen* (2022) 74 Cal.App.5th 537, 544, 554-556.) Yet he makes no attempt to analyze its contents to show that it was lawful. Further, even some of the evidence that Jenkins does cite in his own defense (but does not actually discuss) supports a reasonable inference that RSG actively solicited SMGI clients.[15]

In light of Jenkins' incomplete, one-sided discussion of the evidence, we will not consider his challenge to the sufficiency of the evidence supporting the jury's finding he breached his fiduciary duty. "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) When the appellant fails to do that, we deem the sufficiency of the evidence issue waived. (*Id*. at p. 218; *Foreman & Clark Corp., supra,* 3 Cal.3d at p. 881.) An appellant who discusses " 'merely their own evidence' " falls short of tendering an issue for the appellate court's consideration. (*Foreman & Clark. Corp.*, at p. 881, italics omitted.) In short,

___

stating "I truly look forward to our paths crossing again in the not too distant future and being of service to you once again."

[15] Specifically, he cites email correspondence with an SMGI customer "recommend[ing]" that they "stay with SMGI for thirty days" before making a decision about whether to transfer their business while RSG in the meantime promised to "be looking to find you the best possible officers in case at the end of those days you want the current officer replaced or they come to Resolute with the account," in order to "separate[] you from the whole mess, provid[e] you with an industry-standard transition and cannot be questioned." The jury could reasonably infer from the face of that communication that the effort to lure customers away from SMGI was structured to reach fruition under cover of a 30-day waiting period designed to minimize legal exposure.

Jenkins has waived his claim that the evidence was insufficient to support the jury verdict finding that he breached his fiduciary duty to SMGI.

### 8. Interference with Prospective Economic Advantage Verdict

Jenkins argues that the $150,000 jury verdict for interference with prospective economic advantage must be reversed because the claim was not pled.

He forfeited this issue because he allowed the cause of action to go to verdict without objection. He did not object to the jury instruction on this cause of action, nor to the inclusion of this claim on the verdict form. " ' "Where the parties try the case on the assumption that . . . [an] issue . . . [is] raised by the pleadings, . . . neither party can change this theory for the purpose of review on appeal." ' " (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48-49; accord, *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 392; see also, e.g., *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 277 [failure to object at trial to error in special verdict form waives issue on appeal]; *Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 737 [contention that liability theory is beyond the scope of the pleadings held forfeited by failing to object].)

In his reply brief, Jenkins tacitly concedes he forfeited this issue, urging us not to "bless[]" this claimed error "by waiver." We decline the invitation. Had the issue been called to the trial court's attention, SMGI might have sought to amend the pleadings to conform to proof, and we will not unfairly deprive it of the right to request and likely obtain such relief by addressing this claimed pleading defect for the first time on appeal.

### 9. Interference with Contract Verdict

Citing authority that agents cannot be liable for interfering with contracts entered into by their principal (see *Shoemaker v. Myers* (1990)

25

52 Cal.3d 1, 24; *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1603-1604; *PM Group, Inc. v. Stewart* (2007) 154 Cal.App.4th 55, 65), Jenkins argues he cannot be liable for interfering with SMGI's contracts because *while he was employed there* he was functionally a party to those contracts (having procured them for SMGI in his capacity as CEO). This argument is forfeited because it contains no discussion of the evidence or citation to any portion of the record. It also is unpersuasive: Jenkins fails to discuss any of his conduct after he resigned from SMGI, when he was no longer acting as an agent for SMGI, much less explain why that conduct would not be sufficient to support the claim.

Jenkins also argues that the evidence is insufficient as a matter of law to support the jury's verdict that he intentionally interfered with SMGI's clients, because it is undisputed that SMGI itself terminated those contracts.

We reject this argument. The jury found that SMGI had existing contracts with five entities (the California Lottery, the Port of Seattle, the East Bay Municipal Utility District, the East Bay Asian Local Development Corporation, and Jones Lang LaSalle, Inc.) and that Jenkins intentionally interfered with "one or more" of them, for which it awarded $150,000 in damages. Accordingly, to overturn the jury's verdict Jenkins must show there is no substantial evidence he interfered with *any* of them.[16]

But Jenkins has failed to discuss all the relevant evidence concerning at least one of the clients, the East Bay Municipal Utility District (EBMUD), resulting in a one-sided recitation of the facts that works a forfeiture. Jenkins asserts that EBMUD contacted SMGI to discuss the contract and

---

[16] We note that SMGI concedes that its contract with the Port of Seattle was "extremely unfavorable," it was "suffering huge losses" under the contract and it "chose to terminate" the contract.

26

SMGI told the client it could no longer service the contract, thereby ending the relationship. He asserts that "Jenkins had nothing to do with SMGI's loss" of this relationship. But Jenkins does not mention testimony by SMGI co-founder and board member Robert Shiells, cited by SMGI in its statement of facts, that this entire episode was precipitated by Jenkins' solicitation letter:

"Q:    [W]as SMGI able to keep that work after Mr. Jenkins left?

A:    No.

Q:    What happened with that contract?

A.    *They contacted us and said that we were not going to be their—no longer be their provider. Principally with the poison-pill letter from Mr. Jenkins, it did not appear that we could continue services.*"[17]  (Italics added.) Jenkins' incomplete discussion of the evidence forfeits his contention the evidence is insufficient to prove he interfered with the EBMUD contract. (See *Foreman & Clark Corp.*, *supra*, 3 Cal.3d at p. 881.)  Further, a jury could reasonably infer that but for Jenkins' letter, EBMUD would not have reached out to SMGI to question SMGI's ability to continue providing it with services. Accordingly, he has not demonstrated that the jury's finding he interfered with "one or more" existing client is unsupported by substantial evidence.

### 10.  Intentional Interference with Prospective Economic Advantage Verdict

The jury found that SMGI had no existing contract with Levi's but that there was an economic relationship that probably would have resulted in an economic benefit to SMGI that Jenkins disrupted. SMGI board member

---

[17]  Jenkins does cite to this testimony elsewhere in his brief (on the issue of causation) and says it is not substantial evidence. No legal authority is cited for that proposition, and we therefore disregard it.

27

Shiells testified Levi's was an "event-driven customer" for whom SMGI would work from time to time but that there was nothing ongoing. Jenkins asserts that there is no substantial evidence to support tort liability for the loss of this relationship solely because "[w]hen asked why . . . Levi's did not call SMGI in 2016, Shiells responded by saying 'I don't know why.' " That conclusory argument, unsupported by any legal authority or analysis, does not meet Jenkins' burden to show error.

It also fails to accurately summarize Shiells' testimony. Shiells testified, "I don't know why. *Well, I assume it was because of the letter they received that we no longer had a CEO or any management on the staff.*" (Italics added.) Jenkins makes no argument that the jury could not reasonably infer the same thing. Thus, he has failed to show the verdict is unsupported by substantial evidence.

Moreover, as noted, the first day of Shiells' testimony is unreported. When no reporter's transcript is provided, "it is presumed that the unreported trial testimony would demonstrate the absence of error." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992; accord, *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1125, fn. 4 ["[i]n the absence of any record of [witness's] testimony at the evidentiary hearing, we must presume that testimony supports the court's findings"]; see also *Foreman & Clark Corp., supra,* 3 Cal.3d at p. 881 [appellate court must presume " 'the record contains evidence to sustain every finding of fact' "].) So we must conclusively presume that his testimony would support a finding in SMGI's favor.

### 11. Causation and Harm

Jenkins asserts that SMGI failed to prove that his actions caused damage to SMGI. We reject this argument because it cites legal authority

28

without explaining how it applies, relies on conclusory factual statements unsupported by citations to the record, and is presented in a vacuum with no analysis of the jury's verdict. For example, as just discussed, a jury could reasonably conclude Jenkins caused the disruption of actual or prospective relationships with both Levi's and EBMUD. Jenkins' argument is insufficient to demonstrate error.

## 12. Remaining Issues

Jenkins argues that his mere "act of quitting was wrongly used as a basis for interference" of liability, citing (but not discussing) portions of testimony by SMGI's damages expert to which no objection was interposed, portions of SMGI's closing argument to which no objection was interposed, and the jury instructions on intentional interference with prospective economic relations which imposed liability for *communications with clients,* not the act of quitting.[18] Jenkins asserts that the tort verdict violates "the most basic [canons] of freedom of mobility for employees," because "Jenkins was an at-will employee and had every right to leave SMGI at any time."

That is exactly what the jury was told. It was instructed that Jenkins had the legal right to quit his employment "at any time, with or without cause" and SMGI had "no authority to compel [any] employee to remain as employed." So the premise of Jenkins' argument is flawed. The verdict did

---

[18] In relevant part, they required proof "that in connection with leaving his job at SMGI for his new job at RSP, Mr. Jenkins communicated with SMGI's customers or prospective new customers in a manner that he intended to persuade those customers to transfer their business from SMGI to RSG or in a manner that he knew or should have known would cause or was likely to cause those customers to terminate their existing business relationships with SMGI, even if they decided not to transfer their business to RSG."

not rest on legal principles that sanction "forced servitude" or "some sort of unenforceable noncompete in violation of California law."

Jenkins raises no independent claim of error concerning the denial of his motion for new trial apart from the damages issues already discussed, and so we conclude there was no error in the new trial ruling.

Finally, scattered throughout Jenkins' briefing are bids for leniency toward him given the fact that he represented himself below. He cites no authority excusing pro per litigants from the necessity of preserving issues for appellate review or interposing objections at trial.[19] On the contrary, his own cited authority acknowledges that "pro per litigants are not entitled to special exemptions from the California Rules of Court or Code of Civil Procedure" but "are . . . entitled to treatment equal to that of a represented party." (*Gamet v. Blanchard*, *supra*, at p. 1284.) We agree. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Id*. at p. 985.)

## DISPOSITION

The judgment and the order denying the motion for new trial are affirmed. Respondent shall recover its costs.

---

[19] In support of his bid for leniency, he cites (but does not discuss) authority of no apparent relevance. (See *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 631, 633-635 [abuse of discretion to deny request by party who was represented by counsel for continuance to oppose summary judgment motion]; *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284-1285 [abuse of discretion to deny pro per plaintiff's motion to vacate judgment where trial court gave her "confusing, indeed misleading" orders and communications].)

_____

STEWART, P.J.


We concur.


_____

RICHMAN, J.


_____

DESAUTELS, J.


*Security Mgmt. Group, Inc. v. Jenkins* (A164147, A164970)